Lesker Case.

Argued April 15, 1954. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*William S. Bailey*, with him *G. Thomas Miller* and *Storey, Bailey & Rupp*, for appellant.

*Saul L. Rubin,* for appellee.

OPINION BY MR. JUSTICE MUSMANNO, May 24, 1954:

On March 15, 1954, Kurt J. Lesker, indicating his residence to be 1814 Brownsville Road, Pittsburgh, filed a nomination petition in the office of the Secretary of the Commonwealth as a candidate for Republican nomination for the office of assemblyman from the 9th Legislative District in Allegheny County. On March 22, 1954, Andrew P. Burgess filed objections to Lesker's petition, asserting that Lesker lived at 4334 Brownsville Road, Brentwood Borough, was thus an inhabitant of the 15th Legislative District, and therefore disqualified from being a candidate in the 9th Legislative District.

On March 30, 1954, the Court of Common Pleas of Dauphin County, after hearing both sides, dismissed the objections interposed by Burgess, whereupon he appealed to this Court. In support of his contention that Lesker has abandoned his residence at 1814 Brownsville Road, Burgess introduced evidence to show that in applying, in 1953, for a motor vehicle operator's license and an automobile owner's registration card, Lesker stated his residence address to be 4334 Brownsville Road. Further, that in applying for a liquor license Lesker gave his home address as 4334 Brownsville Road. Also, that Lesker's listing in the telephone book carried the address of 4334 Brownsville Road, and that on the morning of March 23, 1954, Lesker was located at this address where notice of Burgess' objections was served upon him.

In reply to these allegations, Lesker testified that he had lived at 1810 Brownsville Road for 18 years and then in 1951 moved two doors away to 1814 Brownsville Road where he has resided ever since; that he maintains a four-room apartment at 1814 Brownsville

Road and that for five years he has been the Republican chairman of the 25th Ward which embraces both 1810 and 1814 Brownsville Road. Lesker further testified that his wife's death, which occurred on December 21, 1953, had been preceded by a protracted illness and that during this period of distress and concern over his wife's condition, followed by her demise, he had arranged to have important mail sent to his son's home located at 4334 Brownsville Road, but that he himself never took up habitation at that address. Also, that his son bore the same name as himself, which explained the Lesker listing in the telephone book. With regard to the liquor license application, Lesker stated that the 4334 Brownsville Road address appearing on that paper was the result of a clerical error in the office of the Liquor Dealer's Association, of which he was a member and officer.

Article 2, Section 5 of the Constitution of Pennsylvania provides that: "[Representatives] . . . shall have been citizens and inhabitants of the State four years, and inhabitants of their respective districts one year next before their election (unless absent on the public business of the United States or of this State), and shall reside in their respective districts during their terms of service."

An inhabitant is defined in Webster's Unabridged Dictionary as "one who dwells or resides permanently in a place, as distinguished from a transient lodger or visitor." Further, that the general term "implies permanent abode." There can be no doubt that in the terminology of Pennsylvania jurisprudence, inhabitant is intended to mean the most permanent type of dweller or resident. Justice AGNEW, in *Fry's Election Case*, 71 Pa. 302, 308, treated this subject historically: "Thus in the laws agreed upon by William Penn on the 5th of May 1682, the second section provides: 'That

414

every inhabitant in the said province, that is or shall be a purchaser of one hundred acres of land, or upwards, . . . shall be deemed and accounted a *freeman* of the said province, and every such person shall and may be capable of electing or being elected representatives of the people in Provincial Council, or General Assembly in said province.' "

In the Pennsylvania Constitution of 1790, "every freeman of the age of twenty-one years, *having resided* in the State *two* years next before the election, and within that time paid a State or county tax, which shall have been assessed at least *six* months before the election, shall enjoy the rights of an elector."

In the Constitution of 1838, this section applying to qualifications for elector was not changed, though the term of time was reduced. The nature of residence remained as before, "and its characteristics being unaltered, it strengthens the interpretation that 'residence' in the Constitution means home, fixed abode, domicil of the elector, as distinguished from a place of temporary sojourning." (*Fry's Election Case*, supra, p. 309).

Coming down to the present Constitution of 1874, we find that the definition of inhabitant is one who resides permanently in a given place. This interpretation is reinforced by the fact that the final clause in the quoted Article 2, Section 5, namely, "shall reside in their respective districts during their terms of service" is but an extension of the concept *inhabitant,* as much as if the claims had read: "and shall be inhabitants of their respective districts during their terms of office."

In the *Fry's Election Case* the question arose as to whether students living in Allentown while attending Muhlenberg College in that city, had the right to vote in Allentown under that section of the Constitution

of 1838 which read: "In elections by the citizens, every white freeman of the age of twenty-one years, having *resided* in this state one year, and in the election district where he offers to vote ten days immediately preceding such election . . . shall enjoy the rights of an elector." This Court held that regardless of the period of time the students lived in Allentown, they could not vote in Allentown because their permanent abode was elsewhere. Analyzing the pertinent provisions of the Constitution on the subject, Justice AGNEW pointed out: "The Constitution provides that senators and representatives shall be *inhabitants* of the *state,* the latter three and the former four years; and the last year, *inhabitants* of the *districts* from which they are chosen. So the governor must be an inhabitant of the *state* seven years. Judges of the Supreme Court shall *reside* within the Commonwealth, and other judges, while in office, within the *district* or *county* for which they were elected. It is evident that the term 'inhabitant' or 'resident' in these clauses cannot mean one sojourning temporarily, or for some special purpose, but refers to one who has a permanent abode; the domicil of the senator, representative, governor or judge. . . . Therefore, when the Constitution declares that the elector must be a resident of the state for one year, it refers beyond question, to the state as his home or domicil, and not as the place of a temporary sojourn." (p. 307)

There can be no doubt, therefore, that in order to qualify under Article 2, Section 5 of our present Constitution a candidate for assemblyman must be an inhabitant (a permanent resident) within his claimed legislative district; and he must have resided there, that is, maintained a permanent home establishment there, for at least a year.

416

How do these requirements apply to Lesker? The objector Burgess argues that Lesker's residence is at 4334 Brownsville Road because he so declared it in official correspondence addressed to the Commonwealth. It must be recognized that some confusion has arisen in the lay mind as to what constitutes legal residence because the word *residence* is often used synonymously with *domicile*. Not only are *residence* and *domicile* employed synonymously and interchangeably but often they are used overlappingly with one word including, within its meaning, a part of the meaning of the other. Thus, the person with a country home and a city home may with grammatic correctness say that he resides at both places. In point of law, however, only one of these places can be his permanent legal residence, that is, his domicile. Because he may (everything else being equal) arbitrarily decide which of these two places he will adopt as his domicile; it is said that residence is a matter of intent. And it is because of this loose generalization (that intention makes residence) that the appellant Burgess assumed that Lesker made 4334 Brownsville Road his permanent home because, on two or three occasions, he declared in writing that that address constituted his residence. The appellant, however, here confuses intent with declaration of intent. In the law of domicile, intent is the *actual* state of facts, not what one declares them to be. One may even believe he is expressing intent and yet this expression would not be enough to establish the domicile or permanent abode which makes up legal residence in the law.

In the famous case of *Dorrance's Estate,* 309 Pa. 151, the question arose as to whether John T. Dorrance, whose estate was the subject of appraisement for transfer inheritance tax purposes, was prior to his death

domiciled in Pennsylvania or New Jersey, since he maintained an abode in each state. Having been advised by his attorney that domicile "was largely a matter of intention," Dorrance made it a point to declare orally and in writing that he was a resident of New Jersey. He even went so far as to execute an agreement with his wife that their residence should remain at their estate "Cinnaminson" in New Jersey, even though in point of fact they spent most of their time at their estate "Woodcrest" in Pennsylvania. They also agreed that they would vote in New Jersey and not in Pennsylvania. For tax purposes it was to Dorrance's advantage to have his domicile in New Jersey.

This Court, however, in a learned and exhaustive Opinion by Chief Justice FRAZIER, held that these expressions of intention on the part of Dorrance could not override the facts that he was actually domiciled at "Woodcrest" in Pennsylvania: "The evidence indicates that beyond all question Dorrance's family home and principal establishment was at Radnor [Pennsylvania]. When either he or the members of his family went away on vacations they started from 'Woodcrest' and returned there afterwards. Practically his entire time, except when absent on vacations, was spent there. His friends and acquaintances considered it his home. Indeed we may readily believe that in his heart Dr. Dorrance knew 'Woodcrest' to be his true and only home, but for personal reasons he preferred to state in public that it was not his home when every fact and circumstance pointed to the contrary. As already indicated, his mere declarations, undoubtedly made solely for personal reasons, did not prevent the acquisition of a domicile in Pennsylvania. In our opinion the evidence clearly establishes the legal domicile of Dr. Dorrance to be in Pennsylvania. . . ."

It seems impossible to restrict the terms habitation, residence and domicile to airtight, waterproof compartments. Their meanings seem bound to escape their lexicographical boundaries and mingle with the others since a person's place of *residence* may be identical with his *domicile,* and *habitation* is always a component part of *residence* and *domicile.* However, in strict technical terminology a *habitation* may be defined as an abode for the moment, *residence* a tarrying place for some specific purpose of business or pleasure, and *domicile* the fixed, permanent, final home to which one always intends to return. A person's civil status is determined by his domicile. Thus, a business man may have his family home in the suburbs of a city where he lives with his wife and children. No matter where he travels nor how long he remains away, he always returns to this abode. This is his domicile. For business reasons he may have a residence in the city, even living there for many months of the year. This residence can never become the basis for voting or for candidacy for office. If travelling, he may stay at a hotel, boarding or rooming house. This would be his habitation and, regardless of expression of intention, could never become his legal domicile.

In the case at bar, it is clear that 1814 Brownsville Road is Lesker's domicile. Even if Lesker were to take Burgess' position and insist that 4334 Brownsville Road constituted his domicile, the facts would not support such a claim. Under the provisions of the Constitution he could not be a candidate from the 15th Legislative District because he is not an *inhabitant* of that District. He is not *domiciled* there. The record shows that he never abandoned his 1814 Brownsville Road home. His furniture, personal belongings and clothes are still there; his housekeeper who cared for himself and his wife for 14 years still attends to

her domestic duties there; he votes from this residence; he receives his friends and acquaintances there.

To accomplish a change of domicile there must be not only the *animus* to change but the *factum* as well. There must be an actual transfer of bodily presence from one place to the other. The *animus* and the *factum* do not need to be simultaneous, but until they coincide the change of domicile is not effected. In the law a domicile is as deep rooted as a tree and to transfer it from one location to another requires an operation as intensive as the digging up, loading, transportation, and replanting of an elm or maple.

One almost conclusive criterion of domicile is the *animus* manendi. There must be the intention to *remain*. Counsel for the objector Burgess argues that Lesker's presence at 4334 Brownsville Road on March 23, 1954, when papers were served on him prove his acceptance of that home as his domicile. But the fact that Lesker was at his son's home, visiting with his daughter-in-law and grandson, even staying overnight, was not indubitable proof of an intention to remain, especially in view of the fact that the tree of his entire establishment still remained rooted in the ground at 1814 Brownsville Road.

There is no evidence whatsoever that Lesker moved bag and baggage from 1814 to 4334 Brownsville Road, and until that happens, any declarations of residence at the latter place are as if written in water so far as the establishment of domicile is concerned. The court below properly found that Lesker's domicile is still at 1814 Brownsville Road and that he, therefore, may be a candidate for the General Assembly from the 9th Legislative District, in which 1814 Brownsville Road is situated.

The order of the court below is affirmed. Costs on the appellant.