## Reighard Estate.

Argued March 23, 1955. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Robert C. Haberstroh,* for appellant.

*Robert B. Campbell,* with him *Nelson & Campbell,* for appellee.

*C. A. McAleer,* with him *Leo C. Mullen* and *Herbert B. Cohen,* Attorney General, for Commonwealth.

OPINION BY MR. JUSTICE MUSMANNO, April 19, 1955:

The question in this case is whether David Ross Reighard, who died on October 26, 1950, was at the time domiciled in Pennsylvania or Florida. The Orphans' Court of Blair County held he was domiciled in Pennsylvania. Dora Smith,* asserting herself to be Reighard's widow, has appealed the decision.

A review of the record would indicate that the lower Court could not, on the facts and the law, have possibly come to any conclusion other than the one it decreed. David Reighard was born in Claysburg, Blair County, Pennsylvania, on June 10, 1887. He attended the public schools there, went into the military service during World War I from that community, and engaged in business in Claysburg from 1925 until 1928.

---

* Also known as Dora E. Reighard.

He maintained a checking account with the First National Bank of Claysburg from 1925 until his death. All his financial transactions were carried on in Blair County, Pennsylvania institutions; he paid his Federal income tax to the Collector of Internal Revenue at Philadelphia, as was required of Blair County residents. He belonged to numerous organizations in Blair County, among them the Blair County Motor Club (AAA), Claysburg American Legion Post, Claysburg Rod and Gun Club, Claysburg Volunteer Fire Company, the Forty & Eight, and the Blair County Game, Fish and Forestry Association. In correspondence and in private records he invariably referred to Claysburg as his home. Upon his death he left $100,000 worth of securities, all of which were on deposit and in custody in Blair County. He owned in Claysburg a residence and a small garage with an overhead apartment. He also owned two vacant lots in Bedford County, Pennsylvania.

As against this evidence of Pennsylvania domiciliation, it was shown in behalf of the appellant that twelve years prior to his death, Reighard had rented a small cottage in Oklawaha, Florida at $6. per month, and that in 1950 he had purchased it. It was shown also that he spent his winters in Florida, remaining there from 4 to 6 months every year, that he used Florida license plates for his automobile, claimed the Florida homestead exemption in 1950, registered in 1938 as a voter in Marion County, Florida and paid a Florida resident personal property tax. It was also demonstrated that the decedent had, for the purpose of voting in Florida, declared himself to be a resident of that State.

What is the test of permanent residence or domicile? It is not, as is sometimes supposed, simply the intent of the person involved. The intent without the

physical facts to support the intent cannot create domicile. In the *Lesker Case,* 377 Pa. 411, 416 we said: "In the law of domicile, intent is the *actual* state of facts, not what one declares them to be. One may even believe he is expressing intent and yet this expression would not be enough to establish the domicile or permanent abode which makes up legal residence in the law."

In the *Dorrance's Estate,* 309 Pa. 151, 173, the lighthouse case in Pennsylvania on domiciliary intent, this Court said: "One of the most satisfactory definitions of domicile is that stated by Story in his 'Conflict of Laws': 'By the term domicile in its ordinary acceptation is meant that place where a person lives or has his home. In a strict legal sense that is properly the domicile of a person where he has his true, fixed, permanent house and principal establishment, and to which, whenever he is absent, he has the intention of returning."

No one questions that before Reighard began his annual winter visits to Florida he was a bona fide domiciliary of Pennsylvania. Did he change his domicile? In the *Lesker Case,* supra, we said further: "To accomplish a change of domicile there must be not only the *animus* to change but the *factum* as well. There must be an actual transfer of bodily presence from one place to the other. The *animus* and the *factum* do not need to be simultaneous, but until they coincide the change of domicile is not effected. In the law a domicile is as deep rooted as a tree and to transfer it from one location to another requires an operation as intensive as the digging up, loading, transportation, and replanting of an elm or maple." (P. 419)

Reighard did not move his permanent establishment to Florida. He maintained in Claysburg an uninterrupted habitation open twelve months a year, he retained his bank accounts in Claysburg, he purchased

a lot in the cemetery in Claysburg and it is there that he is buried beside his parents.

It would seem that Reighard hoped to establish a Florida residence only for the purpose of evading Pennsylvania taxes. F. W. Burket, the tax collector of Greenfield Township, Pennsylvania, testified: "Q. You say the reason Mr. Reighard gave you for listing as a non-resident of Greenfield Township was the fact that Pennsylvania taxes were too high. A. That is what he told me."

Russell H. Weyandt testified that Reighard gave to him his reason for his going to Florida: "More or less to get out of the cold weather, and he dealt in stocks and he said it would save him some taxes down there, but he had always been a resident of Pennsylvania."

But, even if successful in avoiding payment of some Pennsylvania taxes, this fact in itself would not effect a change of domicile. As we said in the *Dorrance* case, "Every man must have a domicile somewhere and a man cannot elect to make his home in one place for the general purposes of life, *and in another place for the purposes of taxation.*" (Emphasis supplied). "Where one's conduct conclusively shows his residence to be in one place, his expressed intention that it shall be in another place may not override the fact so as to locate it there. The intention in that case will be inferred from residence alone in the face of contrary expressions of purpose." (p. 166).

If Reighard had really intended to make Florida his permanent habitat, he would most probably have had his fortune or a goodly portion of it, with him there. The fact is, however, that he did not even maintain a bank account in Florida. It is true that he voted twice in Florida and it is true that he used Florida automobile license plates, but these incidents were but fluttering leaves of transitory expression in no way

affecting the trunk of the domiciliary tree whose roots were sunk deep in Pennsylvania soil. There is nothing in the record which even remotely suggests that that tree was ever dug up and replanted in Florida.

Decree affirmed. Costs on the appellant.