## City of Duquesne Election Appeals

*Leonard D. Staisey, Alvin D. Capozzi, Joseph M. Gelman* and *Albert D. Brandon,* for appellants.

*Maurice Louik,* for appellee.

FIOK, J., December 22, 1965.—The matter before the court is the disposition of appeals from the rulings of the Board of Elections of Allegheny County, Pa., on challenges to the validity of certain absentee ballots

cast in the general election of November 2, 1965, for the offices of mayor and city council in the City of Duquesne, Allegheny County, Pa. Frank Kopriver, Jr., candidate for mayor, has challenged two ballots, one of which was opened and found to be void, and one of which was unopened because the envelope containing the ballot was unsigned. He, together with Andrew Valco, candidate for city council, also challenged the ruling of the board of elections, sitting as the return board, on 13 other ballots for matters concerning the application for ballot. Walter V. Babic, a candidate for city council, has challenged one opened ballot found to be void by the board. James J. Pucci, candidate for mayor, has challenged the ruling of the board on 11 ballots for matters concerning application for the same.

At the time of hearing these various appeals, the appeal of Frank Kopriver, Jr., relative to the absentee ballot, which remained unopened because it lacked the signature of the elector, was withdrawn. Likewise, in connection with the appeals of Frank Kopriver, Jr. and Andrew Valco, the appeals relative to Nina P. Krear and William A. Krear were also withdrawn. There remains, therefore, a determination as to the validity of 25 absentee ballots cast.

Under the provisions of the Act of June 3, 1937, P. L. 1333, sec. 1407, 25 PS §3157, any person aggrieved by any order or decision of the county board regarding the computation or return of any election may appeal therefrom within two days after such order or decision shall have been made to the court of common pleas, setting forth why he feels that an injustice has been done and praying for such order as will give him relief. The court is given power and authority to hear and determine all matters pertaining to any fraud or error committed in any election district to which such appeal relates and to make such decrees as right and justice require. Such appeal is not a de novo proceeding. The

powers given to the court on appeal are exactly those given to the return board, and the appeal merely affords the opportunity to determine the correctness of any ruling or decision made by the board either on the law or the evidence before it: Focht's Appeal, Eighteenth Congressional District Nomination, 275 Pa. 449, 119 A. 494 (1923). The testimony on appeal, therefore, was limited only to those matters which could not be made available at the hearing conducted before the board because of the time limitation, and only to the extent that such testimony would aid the court in formulating such a decree as right and justice requires. To do so otherwise could possibly lead to a determination on matters which were not presented or considered by the board. Clearly, such appeal is not intended to take the place of an election contest specifically provided for under section 1711 of the Election Code, 25 PS §3291 et seq.

It has been stated that absentee voting is an extraordinary procedure in which the safeguards of the ordinary election process are absent, and that, unless the statutory provisions regulating it are strictly construed, because it is a new concept and because this type of voting is fraught with evils and abuses, the doors would be opened wide for fraudulent practices: Canvass of Absentee Ballots of April 28, 1964, Primary Election, 34 D. & C. 2d 419 (1964); Decision of County Board of Election, 29 D. & C. 2d 499, (1962). While absentee voting is an innovation which came into being by reason of section 19 of article VIII of the Constitution, added by amendment on November 5, 1957, it does not follow that the newness of concept requires strict construction of any legislative enactment on the subject. In effect, absentee voting is remedial legislation which has given many persons previously disfranchised the right to cast a ballot under certain circumstances. Whether this type of voting is

fraught with more evils and abuses than the regular voting conducted at the polls remains to be seen. However, this alone affords no reason for either a strict or liberal construction. Any construction placed on the absentee voting law must keep in mind the nature of the safeguards set up in the statute itself, a determination whether these safeguards have been complied with, and whether the object to be accomplished justifies a narrow or broad construction.

In two appeals under consideration, no challenges were originally assigned to the propriety of issuing absentee ballots, but when the two ballots were opened, challenges were made to the manner of marking them. Ballot no. 1 was declared by the board to be void because the party block was inked in completely and through it the marking of an "X" was visible. We agree with the ruling of the board basically because we are unable to determine from this marking whether the "X" was first placed in the block and then obliterated, or whether the party block was first inked in and the "X" placed therein subsequently. In any event, such markings are clearly unauthorized by the Election Code, 25 PS §3063. The second ballot, also declared void by the board, while containing the proper marking in the party block, showed such erasure of the "X" placed in the straight party block as to cut through the ballot. Under the provisions of the Election Code, 25 PS §3063, such a ballot cannot be counted. "Any erasure, mutilation or defective marking of the straight party column at November elections shall render the entire ballot void, unless the voter has properly indicated his choice for candidates in any office block, in which case the vote or votes for such candidates only shall be counted". Since the only marking was in the straight party block, this vote was properly excluded.

Challenges were raised on four absentee ballots of M. J. Shaughnessy, Margaret Shaughnessy, Irene

Zahorchak and Michael Zahorchak. In each instance the reason assigned for applying for absentee ballot was "duties, occupation or business". The board validated both Shaughnessy votes, allowed the vote of Irene Zahorchak, but voided the vote of Michael Zahorchak.

The occupation of M. J. Shaughnessy was that of a funeral director. He was absent from the city because of a convention to which he was not a delegate. It is contended that his absence was not unavoidable and his absence was but one of his own choosing. He was not required to attend the convention and, therefore, his absentee vote should not be counted. This approach places too much emphasis on the absolute necessity of absence. Under a strict construction, no one, either because of business or duty, may be said to be unavoidably absent and, to a certain extent, choice is exercised by the person involved. The question to be resolved is whether the absence of the voter was reasonably necessary by reason of his occupation. Many persons attend business conventions who are not delegates, but who feel that their business venture may be aided by attending such conventions in which the problems of their particular business are discussed. Such absence cannot be said to be unreasonable and the reason assigned complies with the provision of the statute relating to occupation or business.

Margaret Shaughnessy accompanied her husband to this convention. Since the Election Code does not define "duty" in the Absentee Voting Statute, we cannot say that the board acted capriciously in validating her vote. Ordinarily, a wife is required to follow her husband, and so long as the purpose for which a husband's absence may be justified under the absentee voting law, the wife's absence may also be justified.

In the case of the two Zahorchak votes, the testimony disclosed, and the board found, that they went to California and from there to Hawaii for the purpose of a vacation. While in California, some business was

transacted by looking at a piece of property upon which they granted an unsecured loan to a relative. The evidence justifies the action of the board in voiding the ballot of Michael Zahorchak. However, the vote of his wife was validated on the ground that the wife was under a duty to follow her husband. This pronouncement has some support in Decision of County Board of Election, supra, but we cannot go along with it in the instant case. Regardless of the duty of a wife to follow her husband, a distinction must be made as to the reason for the husband's absence. If the husband was disqualified from exercising an absentee vote by reason of being on vacation, it cannot be said that the wife, in following her husband for the same purposes, may be entitled to vote. The legislators did not include vacationers within the category of absentee voters, and the duty of a wife to follow her husband on vacation would not entitle her to cast the ballot. In this regard, the action of the board is reversed.

The challenge of the right to an absentee ballot in the case of Laura Orup and Ragnar Orup is based upon the contention that they were in Florida on vacation. The testimony does not sustain this contention, and the burden of proving such contention has not been met. While the testimony developed that the Orups were accustomed to taking an annual vacation in Florida each year, these vacations were taken during the months of February and March. In the instant occasion, they departed for Florida in October because of the serious illness of a close relative. The presence of Mrs. Orup was required, and her husband drove her down. Where the illness of a close relative (here the sister of Mrs. Orup, who was suffering from a malignancy) requires the absence of an elector from his voting district, such absence may be justified on the basis of duty owed to blood relatives. The action of the board in validating these votes was proper.

In the case of Richard Kmetz, the board found that

he went to Florida on a honeymoon or a vacation, and ruled that his application for an absentee ballot was improper. It was contended that he went to Florida to seek employment, and the board gave him the opportunity of coming before it to substantiate such reason. However, he refused to give testimony and refused to appear before the board. The evidence disclosed that shortly after marriage, he, with his wife, left for Florida on a honeymoon. Clearly, such reason does not entitle him to an absentee ballot.

The applications of William Gorscak and Betty Jane Pucci turn on the question of domicile. It was contended that both of these applicants had been away from the City of Duquesne for some time prior to the election. In the case of William Gorscak, he testified that his permanent residence was 105 Locust Street in Duquesne, though he lived temporarily at other addresses, one of which was in the State of Ohio, where he was teaching. In the case of Betty Jane Pucci, she testified that she lived away from her permanent residence because she had to work to help defray the expenses of her husband's college education. In both cases, the evidence supports the findings of the board that the permanent residence has not been changed and that each was entitled to an absentee ballot.

The Election Code provides:

"In determining the residence of a person desiring to register or vote, the following rules shall be followed so far as they may be applicable:

"(a) That place shall be considered the residence of a person in which his habitation is fixed, and to which, whenever he is absent, he has the intention of returning": Act of June 3, 1937, P. L. 1333, sec. 704, 25 PS §2814.

In Lesker Case, 377 Pa. 411, 418, 105 A. 2d 376 (1954), the court defined what was meant by the term "fixed residence":

"It seems impossible to restrict the terms habitation, residence and domicile to airtight, waterproof compartments. Their meanings seem bound to escape their lexicographical boundaries and mingle with the others since a person's place of *residence* may be identical with his *domicile*, and *habitation* is always a component part of *residence* and *domicile*. However, in strict technical terminology a *habitation* may be defined as an abode for the moment, *residence* a tarrying place for some specific purpose of business or pleasure, and *domicile* the fixed, permanent, final home to which one always intends to return. A person's civil status is determined by his domicile. Thus, a business man may have his family home in the suburbs of a city where he lives with his wife and children. No matter where he travels nor how long he remains away, he always returns to this abode. This is his domicile. For business reasons he may have a residence in the city, even living there for many months of the year. This residence can never become the basis for voting or for candidacy for office. If travelling, he may stay at a hotel, boarding or rooming house. This would be his habitation and, regardless of expression of intention, could never become his legal domicile". (Italics in original.)

Anna Erashinko made application for an absentee ballot assigning inability to attend her polling place because of a "crippling arthritis—unable to walk". However, in her affidavit taken on November 21, 1965, she stated that she was not sick, did not need an absentee ballot and was physically able to go to the polls on election day. In this affidavit, she contradicted an earlier affidavit which she claims she signed in blank. Based on this evidence, the board properly rejected her ballot.

The application of Ella Majerchik, although obviously seeking an absentee ballot based on inability to attend her polling place because of illness, did not check

off the reason for requesting the ballot. On this technical ground, the challenge was sustained by the board. It was conceded by all that on the day the application was signed both by her and her attending physician, she was in the McKeesport Hospital. She requested that her ballot be sent to room 551 of the same hospital. There is no doubt whatever that she was there on election day. Her physician certified "that the facts set forth above *regarding disability or illness are true* to the best of my knowledge and belief". True, no facts were checked relating to disability or illness, but the certification of her physician cannot be completely ignored.

The board apparently relied on the decision in Canvass of Absentee Ballots of April 28, 1964, Primary Election, supra, holding that where the voter failed to properly complete the application form, such omission is fatal. We cannot ascertain from that decision whether the same situation was present in that case as is raised in the instant case. We have grave doubts that such pronouncement would have been made under the facts here presented, and we do not consider that case as dispositive of the issue here raised. In any event, this omission was a technical defect in view of the certification by her physician, and we will not disfranchise this elector of her right to vote. This is one classic example why the absentee voting law was passed. The ruling of the board is reversed.

In the case of Orlando Negley, the application for absentee ballot was sought on the ground of illness and physical disability. It was set forth in the application that he was confined at home with a heart condition. Actually, he was suffering from an incurable disease which kept him indoors most of the time. Even religious sacraments were regularly administered to him at his home. The challenge was based on the testimony of a single witness, who stated that at times he was seen in

a neighborhood store purchasing cigars. This evidence was not connected as to time and fell far short of the burden placed upon the challenger to show ability to attend the polling place in person. The mere fact that one is physically able to be out of his home at any given time does not prove that he is capable of being physically present at the polling place on election day. The board properly validated his ballot.

The next group of challenges concern the applications of Louis Bajus, Anna Bodnar, Emma Jenkins and Stanley Kondrat. In all of these applications, the names of attending physicians were disclosed, but the attending physician did not certify the nature of the disability or illness, as required under the Election Code, 25 PS §3146.2(e)(2). The plain provision of the law in this regard cannot be ignored, and the statutory requirements not having been met, the action of the board invalidating such ballots is proper.

The last group of challenges involve the applications of Mary Rathi, Joseph Conlin, Hattie Mae Fleming, Vera Bath, Margaret Chisholm and Elizabeth Davis. In each one of these applications the reasons for seeking the absentee ballot was properly checked, but the name of the attending physician was omitted and the certificate of the attending physician was lacking. Each of these applicants was advanced in years and was suffering from the various infirmities and illness of old age. The reason for seeking the absentee ballots was, in each case, certified by a registered elector of the election district.

The challenges were based on the ground that the names of the attending physicians were omitted and that, in fact, no certification was made by them. This objection may have had validity prior to the amendment of the Election Code by the Act of August 13, 1963, P. L. 707, sec. 20, 25 PS §3146.2(e)(2). The Act of January 3, 1960, P. L. (1959) 2135, 25 PS §3149,

specifically provided that in the case of an absentee elector who was unable to attend his polling place because of illness or disability, his application had to set forth that he was advised by his physician to that effect and such illness or disability *had to be certified* by his physician that he *advised such elector* to be away from his polling place. This provision was held to be mandatory. The Act of 1963, supra, changed this strict requirement by providing that such electors ". . . shall include a declaration stating the nature of their disability or illness and the name of their attending physician, *if any*, together with a supporting declaration signed by such attending physician, *or, if none*, by a registered elector unrelated by blood or marriage of the election district of the residence of the applicant. . . ." (Italics supplied).

This new provision contemplates that the applicant is cognizant of the nature of his disability and the act requires that this be set forth. The act also makes provision for situations where no physician is attending the applicant, and if none is in attendance, a qualified elector of the district may sign such declaration. The act nowhere states that the word "none" must be inserted in the place for listing the name of the attending physician where no physician is in attendance. A reasonable interpretation suggests that if this space in the application is left blank, it is tantamount to saying "none" or that no physician is in attendance and, therefore, the certification may be made by a registered elector. The act contemplates that a registered elector be permitted to express a knowledge or belief that applicant is ill or disabled from attending his polling place.

It is at once apparent that the legislature made substantial changes from the provisions of the Act of 1959, supra, and by these changes intended to ameliorate the harsh rule enunciated under the earlier act. A change

of language, such as here, in a subsequent statute on the same subject matter indicates a change of legislative intent: Commonwealth to use of Pandolfo v. Pavia Company, 381 Pa. 488, 113 A. 2d 224 (1955); Haughey v. Dillon, 379 Pa. 1, 108 A. 2d 69 (1954). Section 58 of the Statutory Construction Act of May 28, 1937, P. L. 1019, 46 PS §558, provides that the provision of a law, with certain enumerated exceptions, should be ". . . liberally construed to effect their objects and promote justice". The legislature foresaw the possibility that in the case of persons advanced in years, an attending physician would not always be present or available and, therefore, permitted the expression of a physical fact of disability or illness, easily recognizable by observation, to be made by a qualified registered elector. If the Act of 1963, supra, required the naming of the attending physician and required the signature of an attending physician in all cases, the legislature would have plainly said so. There would have been no need for amending the Act of 1959, which made this a mandatory requirement. The ordinary significance of the verb "shall", as used in the Election Code, generally is mandatory and not permissive, unless the latter meaning is required by the context. Keeping in mind the remedial purpose of the absentee voting law, the public welfare and the desires not to disfranchise electors, the verb "shall" should be construed as permissive, rather than imperative. The power to throw out a ballot for minor irregularities should be sparingly used, and it should be done only for very compelling reason: Reading Election Recount Case, 410 Pa. 62, 64, 188 A. 2d 254 (1963); Norwood Election Contest Case, 382 Pa. 547, 116 A. 2d 552 (1955); Bauman Election Contest Case, 351 Pa. 451, 41 A. 2d 630 (1945). As stated in Ross Nomination Petition, 411 Pa. 45, 48, 190 A. 2d 719 (1963). "The Election Code must be liberally construed so as not

to deprive . . . the voters of their right to elect a candidate of their choice".

Some of the cases reaching a contrary result were decided prior to the 1963 Amendment and, therefore, are not controlling. This court adopts the more liberal approach not prohibited expressis verbis by the legislature.

In all of these cases, the board overruled the challenge and validated the ballots. We agree with its ruling.

Accordingly, we have entered an order consistent with this opinion.

ORDER

And now, to wit, December 22, 1965, upon consideration of the foregoing appeals, the appeals from the actions of the Allegheny County Election Board sitting as a return board are hereby sustained, insofar as they relate to the ballots of Irene Zahorchak and Ella Majerchik, and the board is directed to include such ballots in the tabulation of the final count. In all other respects, the appeals are dismissed.