In re Nomination Petition of Kathleen J. **PRENDERGAST for the Position of Representative in the General Assembly, 196th Legislative District—Democrat.**

**Francis D. McKee, Petitioner.**

Commonwealth Court of Pennsylvania.

Argued Feb. 27, 1996.
Decided March 6, 1996.
Publication Ordered March 27, 1996.

J. Bart DeLone, for Petitioner.

Amy L. Putnam, for Respondent.

Before DOYLE, J.

DOYLE, Judge.

Before this Court is the petition of Francis X. McKee to set aside the nomination petition of Kathleen J. Prendergast, Democratic candidate for the position of Representative in the Pennsylvania General Assembly, 196th Legislative District. This opinion is written in explanation of this Court's February 28, 1996 order which set aside the nominating petition of Prendergast because she will not have resided in Pennsylvania for four years prior to the forthcoming general election on November 5, 1996, as required by Article 2, Section 5, of the Pennsylvania Constitution.

The relevant facts are as follows. Prendergast resided in Pennsylvania from January 4, 1963, the date of her birth, until August of 1990 when she moved to Arlington, Virginia to attend the George Mason University School of Law. While living in Virginia attending law school, she obtained a Virginia driver's license and registered her automobile in that state. As a citizen of Virginia she also qualified for the lower tuition rate at George Mason University, a state institution of higher education. Additionally, and what is of critical importance, she registered to vote as a citizen of Virginia and, in fact, did vote in several elections there. After graduating from law school and taking the Pennsylvania bar examination, Prendergast returned to Pennsylvania in January of 1994, and on May 27, 1994, she registered to vote in Pennsylvania.[1]

On February 13, 1996, Prendergast filed her nomination petition and the required candidate's affidavit for the office of Representative in the Pennsylvania General Assembly. The candidate's affidavit signed by Prendergast includes an affirmation that she satisfies the requirements of Article 2, Section 5, of the Pennsylvania Constitution and that she has been a citizen and inhabitant of Pennsylvania four years before the next election.[2]

On February 20, 1996, McKee filed the instant petition asking this Court to declare that Prendergast is not eligible for office under Article 2, Section 5, of the Constitution; that her affidavit is false and, thus, void; and to strike Prendergast's name as a candidate in the April 23, 1996 primary election.

McKee contends that Prendergast cannot satisfy the requirements of Article 2, Section 5, of the Pennsylvania Constitution, which provides as follows:

> Senators shall be at least twenty-five years of age and Representatives twenty-one years of age. *They shall have been citizens and inhabitants of the State four years, and inhabitants of their respective districts one year next before their election* (unless absent on the public business of the United States or of this State), and shall reside in their respective districts during their terms of service. (Emphasis added.)

Specifically, McKee argues that, under the above provision, Prendergast was required to reside in Pennsylvania four years *immediate-*

---

1. On her registration form, Prendergast stated that she was last registered in 1993 in Arlington County, Virginia, listing her previous address as "1515 S. Arlington Ridge Rd., # 703, Arlington, Va 22202."

2. The candidate's affidavit, which is sworn before a notary public, includes the following relevant language:

> I do swear (or affirm) ... that if I am a candidate for the General Assembly, I will satisfy the eligibility requirements of Article II, Sections 5 and 7 of the Pennsylvania Constitution; that unless absent from the State on public business of the United States or this state, I shall have been a citizen and inhabitant of Pennsylvania for four years and an inhabitant of the electoral district specified above for one year next before the election. ...

*ly prior* to the date of the election on November 5, 1996, in order to be eligible to run for office. Prendergast, on the other hand, asserts that Article 2, Section 5, does not mandate that a candidate reside in Pennsylvania four years *immediately preceding* the election, but only requires that a candidate be a resident of Pennsylvania for four years during *any* period of time before the general election.[3]

This direct issue is one of first impression and we hold that the Constitution requires that a candidate for office must be an inhabitant for the required term *immediately preceding* the general election for that office.

While there appears to be no controlling authority directly on point, a single judge opinion written by Judge John A. MacPhail, *In re Nomination Petition of Vidmer,* 65 Pa.Cmwlth. 562, 442 A.2d 1203 (1982), *aff'd,* 497 Pa. 642, 444 A.2d 100 (1982), is instructive. In *Vidmer,* a Pennsylvania General Assembly candidate had relocated to Michigan to attend the University of Michigan and became a resident of that state in 1968. Vidmer qualified for the lower tuition rate Michigan offers to its residents, and he voted in Michigan in the 1976 and 1978 elections. Thereafter, he accepted a position as an administrative assistant to a congressman and became a resident of Virginia. Vidmer returned to Pennsylvania in July of 1981, and in 1982 he sought the nomination for the House seat from the 26th Legislative District. Judge MacPhail held that Vidmer was required to demonstrate that he had been a resident of Pennsylvania in 1978 to qualify under Article 2, Section 5, of the Pennsylvania Constitution. Judge MacPhail reasoned as follows:

> Article II, Section 5 of the Constitution of Pennsylvania provides, *inter alia,* that members of the House of Representatives shall have been 'citizens and inhabitants' of the State four years next before their election. The general election for the House seat Mr. Vidmer seeks will occur November 2, 1982. The critical date when Mr.

Vidmer must have been a citizen and inhabitant of Pennsylvania in order to qualify for the office he seeks is November 1, 1978. The terms 'citizen' and 'inhabitant' [in Article 2, Section 5] are troublesome ... but guidance is afforded to us by our Supreme Court in *Lesker Case,* 377 Pa. 411, 105 A.2d 376 (1954), where our Supreme Court construed similar language appearing then in Article II, Section 5 of the Constitution of 1874. In *Lesker* the Court said that in the terminology of Pennsylvania jurisprudence, 'inhabitant is intended to mean the most permanent type of dweller or resident.' *Id.* at 413, 105 A.2d at 378. The Court went on to say that domicile, as distinguished from residence, was the 'fixed, permanent, final home to which one always intends to return.' *Id.* at 418, 105 A.2d at 380. The Court added that the intention must always be accompanied by supporting physical facts. In order to change one's domicile, the Court held that there had to be not only the *animus* but the *factum* as well; that is, one cannot by intention ... effect a change in domicile without actually relocating. Applying the law in *Lesker* to the case before us, Petitioners would have to prove that Vidmer was not an inhabitant, i.e., a permanent resident within the 26th Legislative District *for a continuous period of four years preceding November 2, 1982....*

*Id.* at 1205 (final emphasis added). Thus, Judge MacPhail held that, regardless of Vidmer's subjective intent to remain a Pennsylvania resident, he had to be a citizen of Pennsylvania for four years immediately preceding the election. Applying the law to the facts, it was clear that Vidmer became a permanent resident of Michigan and did not reestablish residency in Pennsylvania until 1981, disqualifying him under Article 2, Section 5, of the Constitution.

■ The decision in *Vidmer* is consistent with the clear intent of Article 2, Section 5, of

---

**3.** When a court must decide between two interpretations of a constitutional provision, the court must favor a natural reading, avoiding contradictions and problems in implementation, which reflects the intent of the framers and the views of

the ratifying voter. *Commonwealth ex rel. Paulinski v. Isaac,* 483 Pa. 467, 397 A.2d 760 (1979), *cert. denied,* 442 U.S. 918, 99 S.Ct. 2841, 61 L.Ed.2d 286 (1979).

the Pennsylvania Constitution: to guarantee that candidates for the Pennsylvania General Assembly have some minimum attachment to, and understanding about, the Commonwealth and the district they wish to represent. Prendergast's construction of Article 2, Section 5, however, would frustrate the intent of that provision, because a person who lived in Pennsylvania for four years *at any time* in his or her life could return to the Commonwealth and qualify for office in only one year. Therefore, this Court holds that Article 2, Section 5, of the Pennsylvania Constitution requires a candidate to reside in the Commonwealth for four years immediately preceding the election.

■ Next, McKee argues that Prendergast became a citizen of Virginia and that four years have not elapsed since she returned to Pennsylvania and established residency. The facts here show that Prendergast registered to vote in Virginia and, in fact, voted there. Section 704(h) of the Pennsylvania Election Code, Act of June 3, 1937, *as amended,* 25 P.S. § 2814(h), provides that, "[i]f a person goes into another state and while there exercises the right of a citizen by voting, he shall be considered to have lost his residence in this State." Therefore, under Section 704(h) of the Code, Prendergast's decision to vote in Virginia and, thereby, exercise the right of a Virginia citizen, caused her to lose her status as a Pennsylvania resident.

Prendergast stipulated that she returned to Pennsylvania, at the earliest, in January of 1994. Because she will not be an inhabitant citizen of Pennsylvania for four years prior to November 5, 1996, Prendergast is not qualified under Article 2, Section 5, of the Constitution to run for the General Assembly at this time.[4]

4. While Prendergast's sworn statement in the candidate's affidavit, that she was qualified under Article 2, Section 5, to run for office is not, in fact, correct, in light of the parties' disagreement over the proper interpretation of that provision of the Constitution this Court concludes that Prendergast did not intentionally falsify the affidavit. Moreover, this Court was impressed with the complete candor of Prendergast, the only

Accordingly, for all the above reasons, this Court granted McKee's petition to set aside Prendergast's nomination petition.

witness to testify for either party. While Prendergast, as an attorney, is an officer of the legal system (see, Preamble to the Rules of Professional Conduct) whose candor toward the tribunal is expected (Rule 3.3 of the Rules of Professional Conduct), the Court must observe that she complied with those Rules in every respect in a manner that was laudable.