IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In re: The Nomination of Charles :
Tenny a/k/a Charles "Chuckie" :
Tenny :
:
Appeal of: James V. Spingola and : No. 410 C.D. 2025
John A. Lombardo : Submitted: April 1, 2025

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
          HONORABLE CHRISTINE FIZZANO CANNON, Judge
          HONORABLE MATTHEW S. WOLF, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON                          FILED: April 14, 2025


James V. Spingola and John A. Lombardo (collectively, Objectors) appeal the March 21, 2025 order (Trial Court Order) of the Court of Common Pleas of Washington County (Trial Court) denying Objectors' "Petition to Set Aside and/or Strike The Nomination of Charles Tenny a/k/a Charles 'Chuckie' Tenny from the Nomination for the Primary Municipal Election for Magisterial District 27-2-01 Scheduled for May 20, 2025" (Petition) and allowing Charles "Chuckie" Tenny (Candidate) to remain on the ballot for the Office of Magisterial District Judge for Magisterial District 27-2-01 in the May 20, 2025 Municipal Primary Election.  For the following reasons, this Court affirms.

## I.  Background and Procedural Posture

On March 7, 2025, Candidate filed with the Washington County Board of Elections a nomination petition to be placed on the official primary ballots of the Democratic Party and Republican Party for the Office of Magisterial District Judge for Magisterial District 27-2-01 in the May 2025 Municipal Primary Election.  On

March 18, 2025, Objectors filed the Petition in the Trial Court challenging Candidate's nomination petition. The Petition alleged that Candidate's nomination petition is defective because the Washington County/Canonsburg address indicated thereon is not Candidate's true address and because Candidate omitted sources of income from his Statement of Financial Interests (SFI). *See* Petition at 8 & 11-12 (pagination supplied).

The Trial Court conducted a hearing on the Petition on March 21, 2025. *See* Notes of Testimony, March 21, 2025 (N.T.). The Trial Court adequately summarized the evidence adduced at the hearing as follows:

> At the hearing, [] Objectors presented evidence consisting of [e]xhibits of deeds and a mortgage. No testimony was offered by [] Objectors. [Objectors'] Exhibits A and B established that Candidate [] owns a home in Fayette County with his wife [(Fayette Property)]. Objectors also presented a deed that [] Candidate also owns a home at 108½ Murdock Street in Canonsburg Borough[,] which he purchased in 2001 [(Murdock Street Property)]. ([Objectors'] Exhibit E)[.] Objectors' Exhibit C established that an entity, T.I.P. Enterprises, Inc. of Pittsburgh, Pa. owns a building on Adams Ave. in Canonsburg, Pa. and [Objectors'] Exhibit D established that an entity, Smitten Properties, LLC owns another property in Canonsburg Borough.
>
> Candidate [] testified that he lives in Canonsburg, [Pennsylvania,] at the [Murdock Street Property] where he has resided for twenty-four (24) years. ([N.T. at] 13). He stated that he resides in Canonsburg and goes to the Fayette [P]roperty on weekends and at least from Monday through Friday, he is at the [Murdock Street Property], which he considers to be his home. ([N.T. at] 9). His wife resides at the Fayette [Property]. ([N.T. at] 10). No children reside at either address. ([N.T. at] 10). Candidate['s] [Pennsylvania] driver's license lists [the

2

Murdock Street Property] as his address. ([Candidate's] Exhibit 3). His voter registration also utilizes the [Murdock Street Property] address. ([Candidate's] Exhibit 6). [] Candidate's employer, the Borough of Canonsburg, uses his [Murdock Street Property] address for his employment purposes and he pays income tax to Canonsburg Borough. ([Candidate's] Exhibit 2). [] Candidate's bank account and a credit card utilize the [Murdock Street Property] address. ([Candidate's] Exhibits 5, 9). Candidate [] lists on his [SFI] that he has a percentage interest in both T.I.P. Enterprises and Smitten Properties. The only income he reported on his [SFI] is his income from the Borough of Canonsburg where he is employed as a police officer.

Opinion Pursuant to Pa.R.A.P. Rule [sic] 1925 filed April 7, 2025 (Trial Court Opinion) at 1-2.

The Trial Court denied the Petition on the record at the end of the hearing and also in a written order filed the same day. *See* N.T. at 14-16; *see also* Order of Court filed March 21, 2025. Objectors filed a Notice of Appeal to this Court on March 31, 2025.

## II. Issues

On appeal,[1] Objectors argue that Candidate's name should be stricken from the ballot in the May 2025 Municipal Primary Election because the Murdock Street Property address that Candidate listed as his residence on his Candidate's

---

[1] "In reviewing an order adjudicating challenges to a nomination petition, our standard of review permits reversal only where the findings of fact are unsupported by substantial evidence, where there was an abuse of discretion, or where an error of law was committed." *In re Beyer*, 115 A.3d 835, 838 (Pa. 2015).

3

Affidavit, SFI, and nomination petitions is not his true residence and was placed on his petitions to deceive the public. *See* Candidate's Br. at 4 & 8-16.[2]

## III. Discussion

Initially, we observe that

> in reviewing election issues, [appellate courts] must consider the longstanding and overriding policy in our Commonwealth to protect the elective franchise. In promoting that policy, [our Supreme] Court has made clear that the [Pennsylvania] Election Code [(Election Code)[3]] must be liberally construed to protect a candidate's right to run for office and the voters' right to elect the candidate of their choice.

---

[2] We observe that, in addition to the residence issue, Objectors listed a failure by Candidate to report rental income from the Murdock Street Property on his SFI as a further reason to remove his name from the ballot. *See* Statement of Reasons Presented on Appeal filed April 3, 2025, at 2 (pagination supplied); *see also* Statement of Questions Presented, Objectors' Br. at 4. However, because Objectors' brief includes no discussion or development of this argument, Objectors have waived this claim. *See Commonwealth v. Spotz*, 18 A.3d 244 (Pa. 2011) (claim unreviewable and waived for lack of development where appellant did not develop the claim factually or legally, did not support it with citations, and the court could not discern what error allegedly occurred).

Moreover, even if not waived, we observe that our Supreme Court has limited the fatality rule of Section 1104(b)(3) of the Public Official and Employee Ethics Act, 65 Pa.C.S. § 1104(b)(3) (stating that the failure of a candidate to file an SFI in accordance with the provisions of the Ethics Act "shall . . . be a fatal defect to a petition to appear on the ballot"), to candidates who either file untimely SFIs or fail to file them altogether. *See In re Paulmier*, 937 A.2d 364, 371 (Pa. 2007), *as clarified* (Dec. 28, 2007) (holding that "all defects related to the content of disclosures on a timely filed statement of financial interest are subject to timely amendment"). Thus, Candidate's timely filing of his SFI employing information known to him at the time, *see* N.T. at 11, would entitle him to amend incomplete information contained in his SFI, as opposed to justifying his removal from the ballot based on the same.

[3] Act of June 3, 1937, P.L. 1333, *as amended*, 25 P.S. §§ 2600-3591.

4

*In re Nomination Petition of Driscoll*, 847 A.2d 44, 49 (Pa. 2004) (internal citations and quotation marks omitted).  Further, "[n]omination petitions are presumed to be valid, and objectors bear the heavy burden of demonstrating that a candidate's nomination petition is invalid.  Thus, an objector has the burden of proving that a candidate's affidavit is false with regard to statements about residency."  *In re Shimkus*, 946 A.2d 139, 141 (Pa. Cmwlth. 2008) (internal citations omitted).

Section 910 of the Election Code requires a candidate for office to file an affidavit with his nomination petition stating, *inter alia*, the address of the candidate's residence.  *See* 25 P.S. § 2870.  As this Court has explained:

> In *In re Lesker*, [] 105 A.2d 376 ([Pa.] 1954), the Pennsylvania Supreme Court discussed what constitutes a candidate's residence for the purposes of qualifying as a candidate for public office:
>
>> [i]t seems impossible to restrict the terms habitation, residence and domicile to airtight, waterproof compartments.  Their meanings seem bound to escape their lexicographical boundaries and mingle with the others since a person's place of *residence* may be identical with his *domicile,* and *habitation* is always a component part of *residence* and *domicile*.  However, in strict technical terminology a *habitation* may be defined as an abode for the moment, *residence* a tarrying place for some specific purpose of business or pleasure, and *domicile* the fixed, permanent, final home to which one always intends to return.  A person's civil status is determined by his domicile.  Thus, a business man may have his family home in the suburbs of a city where he lives with his wife and children.  No matter where he travels nor how long he remains away, he always returns to this abode.  This is his domicile.  For business reasons he may have a residence in the city, even living

5

there for many months of the year. This residence can never become the basis for voting or for candidacy for office. If traveling, he may stay at a hotel, boarding or rooming house. This would be his habitation and, regardless of expression of intention, could never become his legal domicile.

*Id.* [] at 380. Likewise, in *In re Nomination Petition of Prendergast*, [] 673 A.2d 324 ([Pa.] 1996), the Supreme Court stated:

We have held that the term "inhabitant" or "resident" as stated in [a]rticle II, [s]ection 5, "cannot mean one sojourning temporarily, or for some special purpose, but refers to one who has a permanent abode; the domicil [sic] of the senator, representative, governor or judge. . . ."

A domicile is the place at which an individual has fixed his family home and principal establishment for an indefinite period of time. A domicile once acquired is presumed to continue until it is shown to have been changed. . . . A new domicile can be acquired only by physical presence at a new residence plus intent to make that new residence the principal home.

*Id.* at [] 327-28 (internal citations omitted). These definitions are helpful in that they establish that, whether one uses the term residence or domicile, one's residence for purposes of qualifying for office must be a habitation where one has put down roots, not a place where one has hoisted a flag of convenience.

*Shimkus*, 946 A.2d at 148.

Factors that have influenced this Court's determination of whether a listed address was indeed the candidate's residence include: (1) the candidate's presence or absence

6

at the address, *In re Nomination Petition of Hacker*, 728 A.2d 1033, 1033 (Pa. Cmwlth. 1999); (2) where members of the candidate's household reside, *In re Nomination Petitions of McIntyre*, 778 A.2d 746, 753 (Pa. Cmwlth. 2001) (Kelley, J. single judge opinion); *Hacker*, 728 A.2d at 1033; (3) whether the candidate pays rent on or has a lease for the property he claims as his residence, *McIntyre*, 778 A.2d at 752; (4) where the candidate sleeps, *id.*; (5) what belongings and personal effects the candidate keeps at the address, *id.*; and (6) whether the candidate owns another home to which he appears more permanently attached, *id.*; *Hacker*, 728 A.2d at 1033.

*Shimkus*, 946 A.2d at 148-49. Further, Section 704 of the Election Code provides the following guidance regarding residence determinations:

In determining the residence of a person desiring to register or vote, the following rules shall be followed so far as they may be applicable:

(a) That place shall be considered the residence of a person in which his habitation is fixed, and to which, whenever he is absent, he has the intention of returning.

(b) A person shall not be considered to have lost his residence who leaves his home and goes into another state or another election district of this State for temporary purposes only, with the intention of returning.

(c) A person shall not be considered to have gained a residence in any election district of this State into which he comes for temporary purposes only, without the intention of making such election district his permanent place of abode.

(d) The place where the family of a married man or woman resides shall be considered and held to be his or her place of residence, except where the husband and wife have actually separated and live apart, in which case the place

7

where he or she has resided for two months or more shall be considered and held to be his or her place of residence.

. . . .

25 P.S. § 2814.[4]

Additionally, our Supreme Court has noted that,

[t]o accomplish a change of domicile[,] there must be not only the *animus* to change but the *factum* as well. There must be an actual transfer of bodily presence from one place to the other. The *animus* and the *factum* do not need to be simultaneous, but until they coincide the change of domicile is not effected. In the law[,] a domicile is as deep rooted as a tree and to transfer it from one location to another requires an operation as intensive as the digging up, loading, transportation, and replanting of an elm or maple.

*Lesker*, 105 A.2d at 380. An intent to remain is the "[o]ne almost conclusive criterion of domicile[.]" *Id.* Visiting, even staying overnight at, another location is not indubitable proof of an intention to remain, especially where one's entire establishment remains rooted at another residence. *See id.*

Based on the evidence received at the hearing, described above, the Trial Court found the following on the record in reference to Objectors' residency claim:

The Court finds that it has to use a whole plethora of indications of residency, not just where the wife is. Their

---

[4] "Although Section 704 [of the Election Code] does not, by its express terms, apply to a candidate for office, the courts have so applied this definition." *In re Shimkus*, 946 A.2d 139, 149 (Pa. Cmwlth. 2008) (citing *In re Nomination Petition of Driscoll*, 847 A.2d 44, 51 (Pa. 2004); *In re Prendergast*, 673 A.2d 324, 327 (Pa. 1996)).

personal relationship isn't the only thing that the Court needs to consider.

I think it's clear I look at everything, where he is registered to vote, where he pays taxes, his employment taxes, because if he lives somewhere else, he would pay that one percent there or at least have some tax responsibility there.

Also, where he's registered to vote, his driver's license. There is not enough evidence to say that he lives in Fayette County. He says he goes there on weekends.

N.T. at 14-15. The Trial Court later further explained:

In this matter, Candidate timely filed a nomination petition seeking the nomination for Magisterial Judge in which he identified the address at 108½ Murdock Street, Canonsburg, Pennsylvania[,] as his residence. Objectors had the burden of proving that Candidate's real domicile is in Fayette County, thus disqualifying his from running for Magisterial District Judge in District 27-2-01. [] Candidate is [sic] acknowledged that he and his wife own a home in Fayette County that he built in 2022 for his retirement. ([N.T. at] 9). He stated that he only stays there on weekends and that he is at the Canonsburg address Monday through Friday. ([N.T. at] 10). Candidate [] stated that the Fayette County home is intended for him as a place to spend his retirement and he has not retired yet. ([N.T. at] 9). [] Candidate submitted to the [Trial C]ourt nine documents showing his address in Canonsburg, Pennsylvania. The documents included a payroll stub from the Canonsburg Police Department, [] Candidate's driver's license, tax documents related to the address, [] credit card documentation, [] Candidate's voter registration, utility bills, and bank account information, all of which showed Candidate's address as being in Canonsburg, Pennsylvania. Candidate further testified that he has lived at 108½ Murdock Street for over 24 years. ([N.T. at] 13).

9

The [Trial] Court found that [] Objectors did not meet their burden of proving Candidate's residency as being in Fayette County. [] Objector[s] presented evidence to establish Candidate's ownership of the home in Fayette County; however, [] Candidate is registered to vote in Canonsburg and pays taxes in Canonsburg and not to the municipality in Fayette County where his property is located. Canonsburg is the address on his driver's license. [] Candidate's nine exhibits showed his address as being in Canonsburg. He only goes to the home in Fayette County on weekends. Where his wife lives is not the only consideration for the [Trial C]ourt. Married individuals can live apart. [Candidate's] living arrangement is not a traditional unit with minor children[.] The totality of [the] circumstances must be considered. Using the totality of the circumstances, the [Trial] Court found that [] Objector[s] did not meet their burden of proof to establish that Candidate [] does not reside at 108½ Murdock Street, Canonsburg, [Pennsylvania].

Trial Court Opinion at 5-6 (internal case citation omitted).

Substantial evidence supports the Trial Court's findings. Objectors relied entirely on the documents they entered into evidence to prove Candidate's residence and put forth no testimonial evidence at the hearing of this matter. *See* N.T. at 4. Although Objectors' documentary evidence illustrates that Candidate has owned the Fayette Property since 2021 and encumbered the Fayette Property with a mortgage in 2022, the other documentary evidence put forth by Objectors illustrates that Candidate has owned the Murdock Street Property since 2001. *See* Objectors' Hearing Exhibits A, B & E.

The documentary evidence Candidate entered into evidence consisted of nine documents, all showing Candidate's address as the Murdock Street Property. These documents included: a mortgage statement for the Murdock Street Property,

10

Candidate's paycheck from the Borough of Canonsburg,[5] Candidate's Pennsylvania driver's license, tax documentation related to the Murdock Street Property, documentation from two of Candidate's banks listing the Murdock Street Property as his home and mailing address, Candidate's voter registration, and multiple utility bills for the Murdock Street Property. *See* Candidate's Hearing Exhibits 1-9. In addition to this documentary evidence, Candidate repeatedly testified that he currently lives at the Murdock Street Property, where he has lived for over 24 years. *See* N.T. at 6, 8, 9, 13, 14. Candidate conceded that he owns the Fayette Property with his wife. *See* N.T. at 8. He explained that he and his wife began building a home on the Fayette Property in 2021 and that he intends to reside there once retired, but that he has not yet retired. *See* N.T. at 9. Candidate testified that he is at the Fayette Property two or three days a week, usually on weekends. *See* N.T. at 9. Candidate further explained that his wife lives at the Fayette Property, but his children do not. *See* N.T. at 10.

The Trial Court did not err in determining that Objectors failed to carry their heavy burden of demonstrating that Candidate's nomination petitions are false with regard to statements about Candidate's residency. On the contrary, the totality of the evidence presented illustrates the opposite – that Candidate continues to live for the majority of the time at the Murdock Street Property, a residence that he has long maintained in Canonsburg, and has only relatively recently acquired a second home that he visits on weekends as one would a beach home or cabin in the mountains. That Candidate intends to retire to the Fayette Property is of no moment – he has not yet done so. *See Lesker*, 105 A.2d at 380. Applying the *Shimkus* factors

---

[5] Candidate has worked for the Canonsburg Police Department for 31 years. *See* N.T. at 7.

11

for determining where a candidate resides to the evidence adduced at the hearing, four of the factors weigh in favor of a determination that the Murdock Street Property is Candidate's proper residence: Candidate is present at the Murdock Street Property approximately five days a week; Candidate owns the Murdock Street Property; Candidate sleeps at the Murdock Street Property five days a week; and while Candidate also owns the Fayette Property, he does not appear to be more attached to that property than the Murdock Street Property. No testimony or evidence was received at the hearing regarding what specific belongings or personal effects Candidate keeps at the Murdock Street Property beyond Candidate's testimony that he has lived at the Murdock Street Property for the past 24 years. Accordingly, this factor, at worst, is neutral to an analysis of whether the Murdock Street Property is Candidate's residence. The final *Shimkus* factor – where members of Candidate's household reside – is likewise neutral in that, because no children reside at the Fayette Property, half of Candidate's household (Candidate's wife) resides at the Fayette Property, whereas the other half of his household (Candidate himself) resides at the Murdock Street Property. On balance, these factors weigh in favor of the Murdock Street Property being Candidate's residence, not the Fayette Property to which he intends to someday retire.

Additionally, Objectors' reliance on Section 704(d) of the Election Code, 25 P.S. § 2814(d), is likewise misplaced. Candidate does not automatically reside at the Fayette Property simply because his wife lives there. This is not a case where Candidate has lived with his wife and family at a foreign residence for decades and has recently acquired an apartment or house in a different district for the purpose of running for office, leaving his family behind at the previous residence. The evidence does not illustrate that Candidate's family lives at the Fayette Property.

12

While Candidate is married and his wife does live at the Fayette Property, Candidate's children do not live there. The evidence further illustrates that, for the majority of the week, Candidate and his wife live apart from one another in the two properties, with Candidate living in the Murdock Street Property, where he has resided for multiple decades. As the Trial Court correctly noted, Candidate's wife's place of residence is but one consideration for the court in determining Candidate's residence and must be considered in relation to the totality of the circumstances. *See* Trial Court Opinion at 6. Candidate and his wife are free to engage in whatever living arrangement they find works for them. The Trial Court considered and found Candidate's wife's location of residence to not be determinative based on the totality of the circumstances. This was not error.

In actuality, Objectors' arguments in this matter amount to nothing more than accusations of intended deceit on Candidate's part that are unsupported by evidence of record. *See* Objectors' Br. at 11, 12, 14. Objectors' speculation about Candidate's intent to retire and change his residence at some point in the future does not constitute evidence that disproves Candidate's current residence. The record does not illustrate an "attempt at the old Kansas City Shuffle to establish [Candidate's] residency/domicile one year prior to the May 2025 Municipal election";[6] rather, it establishes his continued residence in Canonsburg for over the past two decades. Despite Objectors' suggestion that Candidate's participation in Canonsburg's Deferred Retirement Option Plan (DROP) program[7] evidences

---

[6] Objectors' Brief at 11.

[7] DROP programs are common programs offered by municipal employers to allow police officers with at least 20 years of service to continue to work and be paid while also receiving pension benefits. Candidate testified that he participates in Canonsburg's DROP program for its

13

Candidate's intent to both retire at a specific time in the future and also to relocate upon his retirement,[8] Candidate's participation in Canonsburg's DROP program, while indicating Candidate's intent to retire at a specified point in time, indicates nothing about Candidate's residence, either current or future. Additionally, Objectors offer no support for the contention that the act of building a home in Fayette County to which Candidate intends to retire somehow extinguishes his residency in Canonsburg. *See* Objectors' Br. at 15. Despite Objectors' suggestions and insinuations, the record simply contains no evidence either of Candidate having changed his residence or intending to deceive the public regarding such a change.

### IV. Conclusion

Based on the above, because we find that substantial evidence supports the Trial Court's conclusion that Objectors failed to meet their heavy burden of proving that Candidate's nomination petition and supporting documentation contained false statements about Candidate's residency, we find no error of law or abuse of discretion on the part of the Trial Court. Accordingly, we affirm the Trial Court Order.

_____
CHRISTINE FIZZANO CANNON, Judge

---

police officers. *See* N.T. at 9. We note that the record contains no evidence that participation in the DROP program would require Candidate to relocate upon completion of the program.

[8] *See* Objectors' Br. at 12.

14

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In re: The Nomination of Charles : 
Tenny a/k/a Charles "Chuckie" : 
Tenny : 
 : 
Appeal of: James V. Spingola and : No. 410 C.D. 2025
John A. Lombardo : 

# **O R D E R**

AND NOW, this 14th day of April, 2025, the March 21, 2025 order of the Court of Common Pleas of Washington County is AFFIRMED.

_____
CHRISTINE FIZZANO CANNON, Judge