548 A.2d 1287

In Re: Nomination Petition of Mike Bunk for Member of The General Assembly for The 180th District of The City and County of Philadelphia. Objection of Thomas Malkowski.

*Vito Canuso, Jr.,* for petitioner, Thomas Malkowski.

*Samuel C. Stretton,* for respondent, Mike Bunk.

OPINION BY JUDGE DOYLE, September 2, 1988:

This opinion is written in support of the order of this Court filed on August 26, 1988.

Before us in our original jurisdiction[1] is a Petition to Set Aside the Nomination Papers of Mike Bunk (Bunk), an independent candidate for member of the General Assembly from the 180th District in the City and County of Philadelphia. Petitioner in this Court is Thomas Malkowski, the Republican candidate for the same office.

There are several issues presented for our determination. At the outset we recognize that a number of challenges to Bunk's nomination papers were in the nature of challenges to individual signatures on various grounds. As to these individual line challenges the parties, with the cooperation of the Philadelphia County Board of Elections, were able to review the relevant registration binders and agree as to the validity or invalidity of all but sixteen signatures. Those sixteen signatures over which disagreement continues are the ones pled in paragraph 3B of the Petition and pertain only to invalid dating or failure to date the signature lines in question. As to those signatures the parties agreed that testimony would not be necessary and that

---

[1] *See* Section 764 of the Judicial Code, 42 Pa. C. S. §764.

the Court could decide the propriety of each signature by examining merely the nomination papers themselves. We are, therefore, left with the following stipulations keyed to the paragraphs of the petition:

3-A. Two hundred signatures were challenged on the basis that the signatures were not qualified electors of the 180th District.

Stipulated: 67—Valid    133—Invalid

3-B. Sixteen names challenged on the basis that signatures were not dated or were invalidly dated.

No agreement to any of these signatures.

3-C. One-hundred-eighty four signatures whose genuiness [sic] is challenged (fraudulent).

Stipulated: 79—Valid    105—Invalid

3-D. Thirteen signatures challenged because they appear on other petitions.

Stipulated: 10—Valid    3—Invalid

3-E. Four names challenged as having signed twice.

Stipulated: 2—Valid    2—Invalid

3-F. Six signatures challenged as not genuine and duplicative.

Stipulated: 1—Valid    5—Invalid

3-G. One-hundred-thirty-eight signatures challenged as being of persons who reside outside the District.

Stipulated: 26—Valid    105—Invalid[2]

Assuming for the moment that the sixteen signatures challenged on the basis of dates are all invalid, the total of single signatures challenged which is invalid is 369. It has been stipulated that Bunk obtained 1,007 signatures on his nomination papers and that he needs 300 to

---

[2] Seven were also invalid for other reasons and, thus, were not counted in the calculations here.

qualify.[3] When 369 is subtracted from 1,007 it can be seen that Bunk still has 638 signatures, 338 more than he needs. Thus, the signatures challenged on the basis of dates will not affect the outcome here.[4]

There are, however, three challenges which involved multiple signatures. We shall discuss each one separately. The first such challenge is pled in paragraph 3-I as follows:

> Said Nomination Petition [sic] was not circulated by the affiant as required.
> Page 2, Line(s) 68, 97, 97 [sic].
> Page 11, Line(s) 40, 92 and 93.
> Page 4, Line(s) 35 and 36.

At the outset Bunk raised a preliminary matter which demands resolution. Bunk asserts that this pleading challenges only the eight individual signature lines listed, not the entire three pages. Petitioner contends that his attack is upon three complete pages of the nomination papers and that the above designated lines were mentioned only to indicate possible witnesses on this issue.[5] Each of the three pages in question contains 100 signatures so the manner in which we interpret this

---

[3] *See* Section 951 of the Pennsylvania Election Code, Act of June 3, 1937, P.L. 1333, *as amended*, 25 P.S. §2911.

[4] Were we to rule upon those individuals' signatures we would invalidate only three of the signatures. We would strike two where no date appears, page 10, line 21 and page 11, line 46 unless evidence was presented (and none was) as to when they were signed. We would also invalidate, absent any explanatory evidence, the signature appearing on page 10, line 32 because the date given is nearly one month after the circulator completed the affidavit. All other signatures challenged which involved dates appearing out of sequence, writeovers, or numbers which appear to be inverted, we would uphold.

[5] Bunk's attorney admitted that he had actual notice at least three days before the hearing of what Petitioner meant by his pleading in paragraph 3-I.

pleading is crucial. We do not believe that in reading the pleadings as Petitioner intended we are permitting a new cause of action or an amendment. Rather, we agree with Petitioner that the first line of paragraph 3-I indicates that the circulation by the affiant is what is challenged and the manner of circulation pertains to each entire page not just those lines specifically denominated. Accordingly, we ruled from the bench at the hearing on August 25, 1988 that Petitioner had pled a challenge to the circulation of all three pages of the nomination papers and the 300 signatures contained therein. We declined, however, to permit Petitioner to present evidence on the chronology in which Bunk (who signed as circulator of the three pages) completed the candidate information on page 1 of each page. We cannot in good conscience read paragraph 3-I as launching such a challenge and, hence, believe that to permit such evidence at the hearing would have been a denial of due process to Bunk on the basis of a lack of notice.

Having thus determined that the petition does challenge whether Bunk circulated the three pages as required we now consider the testimony presented on that issue. Bunk took the stand and testified. We found his demeanor to be sincere and his testimony to be candid. We resolve credibility determinations in his favor and, accordingly, find that he did, in fact, circulate the papers and that he had sufficient personal knowledge as required by the circulator's affidavit as to the events surrounding the circulation and signing of the three pages. Bunk admitted that he did not personally obtain each and every signature,[6] but was assisted by his son and nephew both of whom also credibly testified in a manner consistent with Bunk's evidence. Bunk ex-

---

[6] Bunk suffers from certain physical incapacities making it difficult for him to climb stairs.

plained that he was at most a few houses away at any given time and reviewed each signature obtained by his two assistants. We believe that his "presence" was sufficient so as to enable him to comply with the level of knowledge required in the circulator's affidavit. Further, we do not find Bunk's credibility impeached by his insistence that he was present when signatures were obtained although there was testimony to the contrary that he was not actually present. We find he was present in the vicinity at all times if not in the actual presence of each signer when his or her signature was obtained.

We have also considered closely the testimony of Mr. Erb which was somewhat uncertain because this witness was upstairs when certain discussions over signatures between Bunk and Erb's mother transpired downstairs. We, therefore, resolve credibility questions in favor of Bunk. Finally, we have considered the testimony of Bryan Malkowski, Petitioner's brother, who stated that at the time when his (Bryan's) wife signed Bunk's petition he did not see Bunk in the vicinity. He also admitted, however, that he did not expressly look for him. We, therefore, do not believe his testimony impeaches that of Bunk.[7]

It is well settled that the individual who completes the circulator's affidavit need not actually circulate the petitions; he or she must merely have the requisite knowledge of the qualifying facts appearing in Section 909 of the Election Code, 25 P.S. §2869.[8] *See e.g.,*

---

[7] Even if we were to resolve credibility determinations in favor of Erb and Bryan Malkowski, we believe their evidence would permit only at best the two signatures to which they testified be struck.

[8] That Section provides in pertinent part:
Each sheet shall have appended thereto the affidavit of the circulator of each sheet, setting forth—(a) that he or she is a qualified elector duly registered and enrolled as a mem-

*DeFino Nomination Petition,* 25 Pa. Commonwealth Ct. 646, 362 A.2d 467 (1976). Having heard Bunk's testimony, we conclude that he had such knowledge. We, therefore, hold that Petitioner has failed to prove that the 300 signatures are invalid on the basis that Bunk improperly circulated the papers.[9]

The next issue involves a challenge to one page (number 11) containing 55 signatures. The individual who circulated the petition also notarized it. Our Supreme Court has indicated that such action renders the petition void. In *Citizens Committee to Recall Rizzo v. Board of Elections of the City and County of Philadelphia,* 470 Pa. 1, 367 A.2d 232 (1976), (plurality opinion) the Court opined that when a notary goes beyond being a mere signer and actually circulates a petition his interest in that petition and candidate is greatly increased. It recognized that a notary is prohibited from having more than a general interest in a document he or she notarizes, and, thus, a notary's action in notarizing a

ber of the designated party of the State, or of the political district, as the case may be, referred to in said petition, unless said petition relates to the nomination of a candidate for a court of common pleas, for the Philadelphia Municipal Court or the Traffic Court of Philadelphia or for justice of the peace, in which event the circulator need not be a duly registered and enrolled member of the designated party; (b) his residence, giving city, borough or township, with street and number, if any; (c) that the signers thereto signed with full knowledge of the contents of the petition; (d) that their respective residences are correctly stated therein; (e) that they all reside in the county named in the affidavit; (f) that each signed on the date set opposite his name; and (g) that, to the best of affiant's knowledge and belief, the signers are qualified electors and duly registered and enrolled members of the designated party of the State, or of the political district, as the case may be.

[9] Because of our disposition on this issue we need not decide whether Bunk can amend the papers in question.

nomination petition he or she circulated is violative of Section 19(e) of The Notary Public Law,[10] 57 P.S. §165(e), and renders the petition void. We conclude that *Rizzo* is directly applicable here; therefore, the 55 signatures appearing on the nomination paper, page 11 are struck and voided.[11]

Finally, we are asked to decide a question of first impression. It is a challenge to all the nomination papers. Section 952 of the Election Code, 25 P.S. §2912 requires that:

> All nomination papers shall specify . . . the names and addresses of the committee, not to be less than three (3) nor more than five (5) persons, authorized to fill vacancies, if any shall occur.

The question presented is whether the individuals who were named in the nomination papers of the candidate as the committee to fill vacancies must be qualified electors who live *within the district*. It was stipulated that all three are qualified electors but that two do not live within the district. The Election Code is strangely silent as to whether the committee members need be electors who reside within the relevant district. Petitioner analogizes this Section to Section 951 of the Election Code, 25 P.S. §2911, which refers to "qualified electors" as electors who can sign a nomination paper. "Qualified elector" is defined in Section 102 of the Election Code, 25 P.S. §2602(t), as: "any person who shall possess all of the qualifications for voting now or hereafter prescribed by the Constitution of this Commonwealth or who, being otherwise qualified by continued

---

[10] Act of August 21, 1953 P.L. 1323, *as amended*.

[11] Even granting that all 55 names are invalid, and have not been previously struck in other categories, the 55 signatures increase Petitioner's total to 424, far short of the 708 he needs to succeed.

residence in his election district, shall obtain such qualifications before the next ensuing election." Thus, those signing under Section 951 must be electors who reside within the relevant district. We are not convinced, however, that the term "qualified elector" must be read into Section 952 merely because it appears in Section 951. To the contrary, we believe that the legislature would have added this qualification as it did in Section 951 if it so desired. Further, by engrafting such a requirement upon committee members we would be engaging in judicial lawmaking and additionally would be violating the spirit of the Election Code, *see Nomination Petition of Johnson,* 509 Pa. 347, 502 A.2d 142 (1985), which establishes that the Code should be liberally construed so as not to deprive a candidate of his right to run for office or the voter of his right to elect the candidate of his choice.

We note that the Department of State has in its "Instructions for Filing as an Independent Candidate" (D. Ex. 1) taken the position that "members of this committee are *not* required to be qualified electors of the state or districts referred to in the nomination paper" (emphasis added). While such pronouncement is not controlling upon us, we do find it persuasive.[12] We, thus conclude that the Election Code does not require the committee members to be residents of the particular election district and that this challenge to Bunk's nomination papers must fail.

Based upon the above reasoning, the Petition to Set Aside is denied. Costs are assessed against Petitioner.

---

[12] Because of our ruling upon this issue, we need not decide whether the doctrine of estoppel applies and whether the committee persons' names can be amended, *i.e.,* other electors substituted.

504

## ORDER

AND NOW, August 26, 1988, after due consideration of the Petition to Set Aside the Nomination Petition of Mike Bunk, filed by Thomas Malkowski, and after hearing testimony and receiving other evidence and the stipulations of counsel for the parties on August 25, 1988, the petition of Thomas Malkowski is hereby denied; opinion of the Court to follow.