**In re NOMINATION PETITIONS OF Daniel McINTYRE, Democratic Nomination for Judge, Court of Common Pleas.**

**Samuel Mahfood, Objector.**

Commonwealth Court of Pennsylvania.

Heard March 23, 2001.

Decided April 24, 2001.

Publication Ordered June 7, 2001.

James P. Coletta, Carnegie, for petitioner.

Daniel McIntyre, Pittsburgh, for respondent.

KELLEY, Judge.

On March 13, 2001, Objector Samuel Mahfood filed a Petition to Set Aside the Nomination Petition of Daniel McIntyre as a candidate for the office of Judge of Court of Common Pleas of Judicial District No. 5 in the Democratic Primary Election to be held on May 15, 2001.[1] After finding that McIntyre had filed a false Candidate's Affidavit, this Court, by order of March 27, 2001, granted Objector's Petition to Set Aside Nomination Petition and set aside the Nomination Petition of Daniel McIn-

tyre. McIntyre appealed this Court's order to our Supreme Court which by order of April 20, 2001 vacated this Court's order and remanded this matter for proceedings consistent with this Court's precedent. This opinion and accompanying order are in response to the Supreme Court's April 20, 2001 remand order.

The challenge to McIntyre's Nomination Petition focuses on two issues: (1) whether McIntyre filed a false Candidate's Affidavit because McIntyre's address as listed on the Nomination Petition is different than the address McIntyre listed on his Candidate's Affidavit; and (2) whether notary Patricia J. DiClemente, who notarized several pages of the Nomination Petition, had a direct interest in gathering signatures thereby violating Section 19(e) of the Notary Public Law[2] and invalidating those pages of the Nomination Petition.

Prior to the March 23, 2001 hearing in this matter, there were two separate motions to quash subpoenas filed with this Court. McIntyre also filed preliminary objections to Objector's Petition to Set Aside Nomination Petition alleging therein that the Petition to Set Aside fails to state any legal claims upon which relief can be granted. This Court ruled on the motions to quash and the preliminary objections at the beginning of the March 23rd hearing.

With respect to the first motion to quash, Patricia J. DiClemente filed a motion to quash a subpoena served upon her by Objector. In the motion, Mrs. DiClemente alleged that the document served on her lacked any seal or signature to indicate that it was indeed a subpoena validly is-

---

1. For hearing purposes, this matter was consolidated with *In Re: Nomination Petition of Daniel McIntyre, Republican Nomination for Judge, Court of Common Pleas James T. Weikel, Objector,* 146 M.D. 2001.

2. Act of August 21, 1953, P.L. 1323, *as amended,* 57 P.S. § 19(e). Section 19(e) provides that "[n]o notary public may act as such in any transaction in which he is a party directly or pecuniarily interested."

sued by the Prothonotary of the Commonwealth Court of Pennsylvania. Mrs. DiClemente alleged further that the Petition to Set Aside Nomination Petition lacked any indication that Mrs. DiClemente's testimony or her notary log book would be relevant to any issue raised in the petition and that production of her log book would be unduly annoying and intrusive.

This Court denied Mrs. DiClemente's motion to quash based on the Court's subpoena procedure, which provides as follows. The original subpoena signed by a Court official and sealed with the court seal should be completed and shown to the person being subpoenaed. The original subpoena should remain in the possession of the person serving it and information regarding the service of the subpoena should be endorsed on the back of that subpoena. If a dispute arises regarding service, the parties should have the original subpoena available to file with the Court. The blank copy of the subpoena should be filled out and handed to the person being subpoenaed. The signature block should be marked with an "s/" indicating that a court official had signed the original.

Objector submitted into evidence the completed original subpoena signed by this Court's Prothonotary and sealed with this Court's seal. *See* Exhibit–Objector 1. Information regarding the service of the subpoena is endorsed on the back of the subpoena reflecting that the subpoena was served by handing a copy to Mrs. DiClemente. *Id.* Mrs. DiClemente submitted the copy of the subpoena into evidence. *See* Exhibit–DiClemente 1. The subpoena has been filled out and the signature block is marked with an "s/" indicating that a court official had signed the original. *Id.* Mrs. DiClemente did not come forward with any evidence that she was not shown

the completed original subpoena. Accordingly, this Court denied Mrs. DiClemente's motion to quash subpoena.

With respect to the second motion to quash, the motion was filed on behalf of Candido Bassani and the unknown person Antoinette Bassani by counsel for McIntyre. In the motion, counsel alleges that a subpoena directed to Candido Bassani was delivered to a woman at 2811 Knowlson Avenue, Pittsburgh, Pennsylvania 15226 on or about March 19, 2001. The motion further alleges that Candido Bassani has been deceased for twelve years and that the widow of Mr. Bassani informed the person delivering the subpoena of this fact. The motion alleges that the person attempting to deliver the subpoena then left and returned with the same document; however, the word "Candido" was crossed out, and replaced by a handwritten word "Antoinette" and the words "log book" were also scratched out.

The original subpoena issued by this Court and the copy thereof were submitted into evidence. *See* Exhibit–Objector 3 and Exhibit–McIntyre 1. Upon review of these documents, this Court granted the motion to quash on the basis that when the name "Candido" was scratched out and replaced by the handwritten name "Antoinette," the subpoena was materially altered and was not done with the intent of merely correcting a spelling error.

With respect to the preliminary objections pertinent to this Petition to Set Aside Nomination Petition, McIntyre alleges that there is no basis in either the Pennsylvania Election Code,[3] or any case law decided thereunder to support Objector's claim that McIntyre's Nomination Petition should be stricken for the primary because he changed residence on March 5, 2001

---

**3.** Act of June 3, 1937, P.L. 1333, *as amended,* 25 P.S. §§ 2600–3591.

within the 5th Judicial District. McIntyre also alleges that the factual allegations contained in the Petition to Set Aside Nomination Petition are insufficient to support a claim that Mrs. DiClemente, who notarized several of the pages of the Nomination Petition, had a direct interest in violation of Section 19(e) of the Notary Public Law.

 After hearing arguments, this Court denied the preliminary objections[4] on the basis that it was a question of fact as to whether McIntyre filed a false Candidate's Affidavit and whether Mrs. DiClemente had more than a general interest in the outcome of the primary when she notarized several pages of McIntyre's Nomination Petition. This Court will first address the issue of whether Objector has proven that Mrs. DiClemente had a direct interest in the outcome of the primary resulting in a violation of the Public Notary Law when she notarized several pages of McIntyre's Nomination Petition.

What degree of interest would bar a person from acting as a notary public is a question to be answered on the facts of each case. *Citizens Committee to Recall Rizzo v. Board of Elections of the City and County of Philadelphia*, 470 Pa. 1, 367 A.2d 232 (1976) (plurality opinion). A notary is prohibited from having more than a general interest in a document he or she notarizes. *In re Bunk*, 120 Pa. Cmwlth. 495, 548 A.2d 1287 (1988).

 In his Petition to Set Aside Nomination Petition, Objector alleges that Mrs. DiClemente was so involved in the campaign of McIntyre and had a direct interest in gathering signatures that she circulated a petition for the Republican Nomination while being a registered Democrat, that she filed a false circulator's affidavit on page 14 of the Republican Nomination Petition when as a notary she knew said affidavit was false, that she was a circulator, and that she notarized 34 pages of the Republican Nomination Petition and 43 pages of the Democratic Nomination Petition. Upon review of the evidence presented, this Court finds that the evidence was insufficient to prove that Mrs. DiClemente had more than a general interest in the outcome of the primary election.

 First, as agreed to by Objector at the hearing before this Court on March 23, 2001, Mrs. DiClemente was permitted, pursuant to Section 909 of the Pennsylvania Election Code, to circulate for the Republican nomination for Judge of the Court of Common Pleas while being a registered Democratic. As a result, her circulator's affidavit was not false. Second, there is no limit in the Pennsylvania Election Code on how many pages of a nomination petition a notary may notarize. Finally, based on the testimony presented herein, the fact that Mrs. DiClemente was a circulator did not greatly increase her interest in McIntyre's Nomination Petition.

Mrs. DiClemente testified that she is employed as an office manager by the same law firm that employs McIntyre. However, Mrs. DiClemente testified while she has shared McIntyre's work with another secretary since last October when

---

4. In ruling on preliminary objections, this Court must accept as true all well pleaded allegations in the petition as well as all inferences reasonably deducible therefrom. *In re Pippy*, 711 A.2d 1048 (Pa.Cmwlth.), *aff'd*, 551 Pa. 210, 709 A.2d 905 (1998). This Court need not accept as true conclusions of law, unwarranted inferences from facts, argumentative allegations, or expressions of opinion. *Id.* In order to sustain preliminary objections, it must appear with certainty that the law will not permit recovery, and any doubt should be resolved by a refusal to sustain them. *Id.*

McIntyre became associated with the firm, she primarily works with another partner of that firm with whom she has had a working relationship since 1980. Mrs. DiClemente testified that she intends on remaining in the firm's employ until that partner retires, which will be at least another ten years. Mrs. DiClemente testified that she circulated one page of McIntyre's Nomination Petition for each party because McIntyre approached her and asked her to be a circulator. Mrs. DiClemente testified that she notarized several pages of the Nomination Petition at McIntyre's request. Mrs. DiClemente testified further that she has not participated in any other campaign activities, attended any fund raising functions or engaged in any fund raising activities on McIntyre's behalf.

Accordingly, this Court finds that Mrs. DiClemente did not have a direct interest in the outcome of the election for Judge, Court of Common Pleas, for the 5th Judicial District. Therefore, this Court finds further that Mrs. DiClemente did not violate Section 19(e) of the Public Notary Law.

This Court now turns to the issue of whether McIntyre filed a false Candidate's Affidavit. As stated previously herein, this Court, after finding that McIntyre did file a false Candidate's Affidavit, granted Objector's Petition to Set Aside Nomination Petition and set aside McIntyre's Nomination Petition. In response to McIntyre's appeal of this Court's March 27, 2001 order, the Supreme Court issued a remand order, which orders, in pertinent part, as follows:

AND NOW, this 20th day of April, 2001, the single-judge order of the Commonwealth Court is VACATED, and the matter is REMANDED for proceedings consistent with that court's precedent. *See In re Nomination Petition of Hacker,* 728 A.2d 1033, 1035 (Pa.Cmwlth. 1999) (concluding that "we do not believe that [a candidate's] listing a different address as his residence is such a material defect in his candidate's affidavit that it would cause his nominating petition to be set aside because it is undisputed that both of his addresses are in [the county in which office was sought]"). The Commonwealth Court may make specific findings concerning Appellant's intentions or other factors that would bear upon the determination of whether Appellant should be included on the primary ballot. *See Id.*

*In re: Nomination Petitions of Daniel McIntyre,* 564 Pa. 651, 770 A.2d 315 (2001) (footnote omitted).

Although we have for consideration two separate nominations, one for the office of Judge of Court of Common Pleas of Judicial District No. 5 in the Democratic Primary Election and one for the office of Judge of Court of Common Pleas of Judicial District No. 5 in the Republican Primary Election, for purposes of determining the correct residency, they must be considered together for the intent of the candidate. Accordingly, the issue for disposition is whether Daniel McIntyre's listing a different address as his residence is such a material defect in his Candidate's Affidavit that it would cause his Nomination Petitions to be set aside.[5]

---

**5.** With respect to McIntyre's Nomination Petition for the Office of Judge of Court of Common Pleas of Judicial District No. 5 in the Democratic Primary Election, Objector alleges that on pages 1 through 52 inclusive of the Nomination Petition, line 5 for residence lists McIntyre's residence as "431 Long Drive, Upper St. Clair, PA 15241." This Court notes that the notation "(moving to 2811 Knowlson Ave, Pgh, PA 15226 on March 5, 2001)" is included below line 5 on pages 1 and 2 of the Nomination Petition. The remaining 50

Section 910 of the Pennsylvania Election Code, 25 P.S. § 2870, requires, *inter alia*, that a candidate file an affidavit stating his residence, his election district, the name of the office for which he consents to be a candidate, that he is eligible for such office, and that he will not knowingly violate any provision of the Pennsylvania Election Code. The provisions of the Pennsylvania Election Code must be liberally construed so as not to deprive an individual of his right to run for office or. the voters of their right to elect the candidate of their choice. *In re Pippy*. However, the provisions of the Pennsylvania Election Code relating to the form of nominating petitions and the accompanying affidavits are not mere technicalities, but are necessary measures to prevent fraud and to preserve the integrity of the election process. *Id.* (citing *In re Cianfrani*, 467 Pa. 491, 359 A.2d 383 (1976)). The requirements of sworn affidavits in the Pennsylvania Election Code are to insure the legitimacy of information crucial to this process. *Id.* Thus, the policy of liberal reading of this statute cannot be distorted to emasculate those requirements necessary to assure the probity of the election process. *Id.*

The record of the Nomination Petitions reflects disparity of the purported intended residence of McIntyre. Every page of the 41 pages of the Republican Nomination Petition contains identical writing below line 5 noting the change of address as "moving to 2811 Knowlson Avenue, Pittsburgh, PA 15226 on 3/5/01." Conversely, only two of the 52 pages of the Democratic Nomination Petition contain this same notation. Both Nomination Petitions contain the Candidate's Affidavit of residence as 2811 Knowlson Avenue, Pittsburgh, Pennsylvania 15226.

The testimony of McIntyre at the March 23, 2001 hearing before this Court also reveals a disparity as to which address McIntyre actually resides. McIntyre attempted to show through his testimony that he actually resides and his intended residence is 2811 Knowlson Avenue, Pittsburgh, Pennsylvania.[6]

pages of the Nomination Petition do not contain said notation. Objector alleges further that the Circulator's Affidavit for page 1 is signed by Daniel McIntyre with an address of 431 Long Drive, Upper St. Clair, PA 15241. Objector alleges that on or about March 5, 2001, McIntyre filed a Candidate's Affidavit with the Pennsylvania Department of State Bureau of Elections indicating and affirming his residence is 2811 Knowlson Avenue, Pittsburgh, PA 15226, City of Pittsburgh. Objector alleges that McIntyre's address is 431 Long Drive, Upper St. Clair, PA 15241. Therefore, Objector alleges that the Candidate's Affidavit filed by McIntyre on March 5, 2001 is false.

With respect to McIntyre's Nomination Petition for the Office of Judge of Court of Common Pleas of Judicial District No. 5 in the Republican Primary Election, Objector alleges that on pages 1 through 41 inclusive of the Nomination Petition, line 5 for residence lists McIntyre's residence as "431 Long Drive, Upper St. Clair, PA 15241." Objector alleges

further that the Circulator's Affidavit for page 1 is signed by Daniel McIntyre with an address of 431 Long Drive, Upper St. Clair, PA 15241. Objector alleges that written below line 5 of page 1 of the Nomination Petition is the notation "moving to 2811 Knowlson Avenue, Pittsburgh, PA 15226 on 3/5/01." This Court notes that this notation is included below line 5 on every page of the Nomination Petition. Objector alleges that on or about March 5, 2001, McIntyre filed a Candidate's Affidavit with the Pennsylvania Department of State Bureau of Elections indicating and affirming his residence is 2811 Knowlson Avenue, Pittsburgh, PA 15226, City of Pittsburgh. Objector alleges that McIntyre's address is 431 Long Drive, Upper St. Clair, PA 15241. Therefore, Objector alleges that the Candidate's Affidavit filed by McIntyre on March 5, 2001 is false.

**6.** We note that Objector attempted to subpoena McIntyre to testify in the related matter *In Re: Nomination Petition of Daniel McIntyre*,

McIntyre testified that he changed his voter registration on March 5, 2001 to reflect his address as 2811 Knowlson Avenue, Pittsburgh, Pennsylvania 15226. He testified that he contacted and informed the State Bureau of Elections in Harrisburg that he would be moving on the filing date of his Nomination Petition and Candidate's Affidavit. McIntyre testified that he was advised by the State Bureau of Elections to put the 431 Long Drive address on the Nomination Petition because that was his correct address at the time he circulated his Nomination Petition. He testified that he was further advised to put the 2811 Knowlson Avenue address on the Candidate's Affidavit because that was his correct address when he filed the affidavit.

He testified that he left his wife to reside with his mother-in-law at 2811 Knowlson Avenue. He testified that he and his wife had been discussing the move for six or seven months because his Italian mother-in-law is a very nervous woman, is worried about finances, and speaks very little English. McIntyre testified that he speaks very little Italian. He testified further that he moved without his wife and that he and his wife have a good marriage without any marital problems. McIntyre testified that he and his wife still own the property at 431 Long Drive, Upper St. Clair, Pennsylvania and that his wife remained there to prepare the home for their daughter's wedding in May. He testified that the property is currently not up for sale due to the upcoming wedding.

McIntyre testified further that he has not paid his mother-in-law any rent to date and that there is no lease with respect to the living arrangement. He testified that when he moved from his home at 431 Long Drive, Upper St. Clair to 2811 Knowlson Avenue, Pittsburgh, he only took clothes with him and that he sleeps with his wife at the 431 Long Drive address. McIntyre testified that his life has been chaotic with campaigning and planning the wedding, that his moving in with the mother-in-law is a trial to see if he can live with her, and that he regularly does not return to the Knowlson Avenue address for the evening until 11:30 or 12:00 due to campaigning. He testified that he could not give a schedule as to when he is at the Knowlson Avenue address because he is campaigning all over Allegheny County and working late at his office to catch up on his work. McIntyre testified further that he and his wife intend to move into the City of Pittsburgh with his mother-in-law once things settle down and they are all able to search for a suitable residence. He testified that they intend to move because the 431 Long Drive home is too large and that he and his wife spend most of their evenings in the City of Pittsburgh.

When determining one's residence for the purposes of voting or candidacy for office, this Court finds instructive our Supreme Court's decision in *In re Lesker*, 377 Pa. 411, 105 A.2d 376 (1954). Therein, objections were filed to the nomination petition of a candidate for office of assemblymen on the basis that the candidate was

*Republican Nomination for Judge, Court of Common Pleas James T. Weikel, Objector*, 146 M.D. 2001. *See* Exhibit Objector 6. However, McIntyre agreed to testify without being subpoenaed. We further note that McIntyre did not bring with him any of the documents listed in the subpoena which included wage tax statements for 2000 and 2001, last 3 months pay stubs, driver's license, all deeds to real estate in which he had an interest, waste disposal bills for Long Road, Upper St. Clair Twp., current motor vehicle financial responsibility insurance card, and registration and title to all motor vehicles owned. McIntyre testified that all the foregoing documents would show his address as 431 Long Drive, Upper St. Clair, Pennsylvania 15241.

not an inhabitant of the legislative district. The objector alleged that the candidate had abandoned his residence in the legislative district and was actually residing in another legislative district. In denying the objections, the Supreme Court held that one's intended residence is more than the place where one declares his intended residence to be; instead, intent is to be determined based upon the actual state of facts. Writing for the Supreme Court, Justice Musmanno stated as follows:

It seems impossible to restrict the terms habitation, residence and domicile to airtight, waterproof compartments. Their meanings seem bound to escape their lexicographical boundaries and mingle with the others since a person's place of *residence* may be identical with his *domicile,* and *habitation* is always a component part of *residence* and *domicile.* However, in strict technical terminology a *habitation* may be defined as an abode for the moment, *residence* a tarrying place from some specific purpose of business or pleasure, and *domicile* the fixed, permanent, final home to which one always intends to return. *A person's civil status is determined by his domicile.* Thus a business man may have his family home in the suburbs of a city where he lives with his wife and children. No matter where he travels nor how long he remains away, he always returns to this abode. This is his domicile. *For business reasons he may have a residence in the city, even living there for many months of the year. This residence can never become the basis for voting or for candidacy for office.* If travelling, he may stay at a hotel, boarding or rooming house. This would be his habitation and, regardless of expression of intention, could never become his legal domicile.

*In re Lesker,* 377 Pa. at 418, 105 A.2d at 380 (emphasis added).

In the present matter, it is clear that while McIntyre declares that his intended residence is at 2811 Knowlson Avenue, Pittsburgh, the state of the facts show that he truly resides and is domiciled at 431 Long Drive, Upper St. Clair where his wife continues to reside. Any assertion by McIntyre to the contrary, this Court rejects as not credible. It would be inconsistent with public policy to have a split marital domicile particularly where McIntyre testified that there are no problems in his marriage and that he and his wife are not experiencing a trial separation due to marital problems.

Accordingly, this Court finds that McIntyre's residence is 431 Long Drive, Upper St. Clair, Pennsylvania 15241, not 2811 Knowlson Avenue, Pittsburgh, Pennsylvania 15226 as he stated on his Candidate's Affidavit. Thus, this Court must determine if the fact that McIntyre has not listed his true residence on his Candidate's Affidavit is a material defect. As directed by our Supreme Court, we must decide this issue in light of this Court's decision in *Hacker.*

In *Hacker,* the candidate circulated a nomination petition seeking the Democratic nomination for sheriff in Berks County. The candidate owned two homes in Berks County, one located in Fleetwood and the second located in Kutztown. The candidate listed the Kutztown address as his residence on his candidate's affidavit. A petition was later filed seeking to set aside the candidate's nomination petition on the grounds that the candidate's affidavit was materially false. The evidence presented at the hearing before the court of common pleas with respect to the petition to set aside revealed that the candidate had purchased the home in Kutztown, was attempting to refurbish it and that he had listed his Fleetwood home for sale. In

addition, the candidate offered his voter registration card and his vehicle registration card, both of which listed his address as the Kutztown residence.

The court of common pleas found the candidate's affidavit was not false because the two residences were in the same county and that the candidate believed that he was a resident of Kutztown. On appeal to this Court, we affirmed on the basis that both residences were in Berks County and the court of common pleas found that the candidate actually believed that his residence was in Kutztown having both a home there and that there was no intention on the candidate's part to deceive anyone.

■ Herein, although the two residences at issue in this case are within the same Judicial District, this Court finds that the facts of this case and the *Hacker* case are sufficiently in variance that this Court may find that McIntyre's Candidate's Affidavit is indeed false and that his listing a different address as his residence on his Candidate's Affidavit is a material defect. It is clear from the evidence presented that there was an intention on McIntyre's part to deceive the electorate. This is reflected by the disparity on the face of the Nomination Petitions and by McIntyre's failure to dispel this disparity through his testimony. Unlike the candidate in *Hacker*, this Court cannot find that McIntyre believes that his residence is located at the address listed on his Candidate's Affidavit. As testified to by McIntyre, he has not placed his Upper St. Clair home up for sale, he does not own the property located at 2811 Knowlson Avenue, and if he does move into the City of Pittsburgh, he and his wife will not be residing at the 2811 Knowlson Avenue property but instead will be seeking a more suitable residence.

This Court finds further that McIntyre, being an attorney of the bar of the Supreme Court, is held to a standard of professional conduct especially when aspiring to a judicial position, and must exhibit unquestionable candor of all matters. This is especially true when the candor is for review of the electors.

The Pennsylvania Election Code requires that a candidate file a Candidate's Affidavit stating his residence and his election district. *See* Section 909 of the Pennsylvania Election Code, 25 P.S. § 2870. Moreover, filing an affidavit, with the intent to deceive, that lists an address, which is not the candidate's residence, is more than a technical violation of the Pennsylvania Election Code. It is a material defect because when the affidavit was taken the facts sworn to were not true. Such a defect cannot be cured by subsequent conduct and the Nomination Petition is therefore void and invalid. *See Cianfrani.* Therefore, such defect in McIntyre's Candidate's Affidavit is not amendable.

Accordingly, Objector's Petition to Set Aside Nomination Petition of Daniel McIntyre as a candidate for the office of Judge of Court of Common Pleas of Judicial District No. 5 in the Democratic Primary Election to held on May 15, 2001, is granted.

## ORDER

AND NOW, this 24th day of April, 2001, it is hereby ordered as follows:

1. The Motion to Quash Subpoena filed on behalf of Patricia J. DiClemente is denied;

2. The Motion to Quash filed on behalf of Candido Bassani and the unknown person Antoinette Bassani is granted;

3. The Preliminary Objections of Respondent Daniel McIntyre to Petition to

Set Aside Nomination Petitions are denied in accordance with the foregoing opinion;

4. Objector's Petition to Set Aside Nomination Petition of Daniel McIntyre in the above-captioned matter as a Democratic candidate for Judge, Court of Common Pleas for the 5th Judicial District is hereby granted, and the said Nomination Petition of Daniel McIntyre is hereby set aside. The Prothonotary is directed to notify the parties and their counsel of this order and also certify a copy thereof to the Secretary of the Commonwealth of Pennsylvania, forthwith; and

5. Costs are assessed on Respondent.