In re: The Nomination Petition of Brendan F. BOYLE as Candidate for State Representative in the 170th Legislative District.

**Petition of: Michelle Szydlowski.**

Commonwealth Court of Pennsylvania.

Heard March 27, 2014.
Decided March 31, 2014.
Publication Ordered May 20, 2014.

---

Lawrence M. Otter, Silverdale, for petitioner.

Timothy P. Brennan, Allentown, for respondent.

Wesley M. Weymers, Harrisburg, for Democratic Caucus of the Pennsylvania House of Representatives.

OPINION BY Senior Judge COLINS.

This matter is a petition filed by Michelle Szydlowski (Objector) to set aside the nomination petition of Brendan F. Boyle (Candidate) as a candidate for the position of Representative in the Pennsylvania General Assembly, 170th Legislative District, in the May 20, 2014 Democratic primary. An evidentiary hearing on the petition to set aside was held before this Court on March 27, 2014, following which the Court denied Objector's challenge to Candidate's nomination petition and entered an Order dismissing the petition to

set aside. This Opinion sets forth the reasons for the Court's decision.

Candidate's nomination petition consists of 86 pages containing a total of 1,054 signatures. Section 912.1(14) of the Pennsylvania Election Code[1] provides that a nomination petition for the office of Representative in the Pennsylvania General Assembly must contain at least 300 valid signatures. 25 P.S. § 2872.1(14). Candidate, the incumbent Representative for this legislative district, is unopposed in the May 20, 2014 primary. No other candidate has filed any nomination papers for this office. Candidate has also filed nomination papers as a candidate for the United States House of Representatives in the 13th Congressional District in the May 20, 2014 primary.

Objector has not challenged the genuineness of any of the 1,054 individual signatures as signatures of registered Democratic voters residing in the 170th Legislative District and has not alleged any impropriety in the gathering of any of the signatures on Candidate's nomination petition. Objector, however, has challenged 68 pages of the nomination petition and contends that the 833 signatures on those pages are invalid on the ground that those pages were notarized by a notary public who is a member of Candidate's legislative staff. Because the unchallenged 18 pages of the nomination petition notarized by other notaries contain only 221 signatures, Objector asserts that Candidate's nomination petition does not contain the required 300 valid signatures.

Pages 1–22, 24–34, 37–49, 59, 64–80, 82–84, and 87 of Candidate's nomination petition were notarized by Nicholas Himebaugh.[2] (Stipulation ¶ 4.) Those pages contain 833 signatures. (Stipulation ¶ 2.) Mr. Himebaugh was not a circulator of any of those pages of the nomination petition. (Stipulation ¶ 9.) Mr. Himebaugh is Candidate's legislative assistant in his local district office. (Stipulation ¶¶ 3, 5; Exhibit P–14.) Mr. Himebaugh, however, is employed and paid by the Pennsylvania House Democratic Caucus (Caucus), not by Candidate. (Stipulation ¶¶ 5–6; Exhibit P–14; Exhibit R–2.) The Caucus has the authority to hire, fire, transfer or reassign Mr. Himebaugh, and his employment with the Caucus could continue by reassignment if Candidate is not reelected. (Stipulation ¶¶ 6–7.)

The only witness who testified at the hearing in this matter was Nicholas Himebaugh, whom Objector called to testify on cross-examination. Mr. Himebaugh testified that he notarized pages of Candidate's 170th Legislative District nomination petition, and that he performed these notarizations at Candidate's campaign office. Mr. Himebaugh did not circulate any pages of Candidate's 170th Legislative District nomination petition. Mr. Himebaugh testified that he circulated pages of Candidate's congressional nomination petition and of the nomination petition of State Representative Kevin Boyle, Candidate's brother, in whose legislative district Mr. Himebaugh resides. Mr. Himebaugh testified that he also notarized pages of both of the congressional and Kevin Boyle petitions that he did not circulate.

1. Act of June 3, 1937, P.L. 1333, No. 320, § 912.1, added by the Act of December 12, 1984, P.L. 968, *as amended,* 25 P.S. § 2872.1(14).

2. Although Objector challenged and the parties have referred to pages "82–87," the origi-

nal petitions produced by the Secretary of the Commonwealth do not contain any page 85 or 86, and are numbered 1–84, 87 and 88. Petition pages 23, 35–36, 50–58, 60–63, 81 and 88 were not notarized by Mr. Himebaugh.

Mr. Himebaugh testified that he performed all of his notarizations of campaign petitions outside of working hours. That testimony is corroborated by the documentary evidence and record. All but one of the 68 pages of Candidate's 170th Legislative District nomination petition that Mr. Himebaugh notarized, and all but three of the pages of the congressional and Kevin Boyle petitions that Objector introduced in evidence, were notarized on March 8 and 9, 2014, a Saturday and Sunday. There is no evidence suggesting that any of those other four petition pages, which were notarized on March 10, 2014, were notarized during the work day. Mr. Himebaugh testified that he volunteered on his own initiative to circulate petitions for Candidate's congressional candidacy and for his legislative representative, Kevin Boyle, and that he circulated those petitions on evenings and weekends. Mr. Himebaugh testified that he also filed supplemental pages of Candidate's congressional petition and a few supplemental pages of Candidate's 170th Legislative District nomination petition in Harrisburg on March 11, 2014. That activity was on his own personal time; the Caucus's employment records show that Mr. Himebaugh requested leave to take that day off from work. (Exhibit P–13.)

Mr. Himebaugh's notary commission was originally paid for by the Caucus, but Mr. Himebaugh on March 6, 2014 paid the Caucus the cost of his notary commission to buy his commission back. (Exhibit R–3.) Mr. Himebaugh testified that the Caucus prohibits employees from notarizing campaign documents if the notary commission is paid for by the Caucus, but does not prohibit such notarizations where the notary has bought his commission back from the Caucus, provided that the notarizations are done outside of business hours and are not done at the office. This testimony is likewise corroborated by the documentary evidence. Mr. Himebaugh's agreement with the Caucus buying back his commission states that "the Caucus requires that the notarization of any political campaign nomination petitions or papers must occur on the notary's own time and away from the office." (Exhibit R–3.) All of Mr. Himebaugh's petition notarizations were after March 6, 2014.

Having heard and considered all of the testimony and other evidence introduced at the hearing, the Court finds that Mr. Himebaugh's testimony is fully credible in its entirety. The Court finds that Mr. Himebaugh's notarizations and campaign activities were on his own time and that there was no impropriety in those activities. Indeed, Mr. Himebaugh's circulation of nomination petitions for Candidate's congressional campaign and for Kevin Boyle, as a volunteer on his own time, was an exercise of his fundamental First Amendment rights. *Buckley v. American Constitutional Law Foundation, Inc.,* 525 U.S. 182, 186, 119 S.Ct. 636, 142 L.Ed.2d 599 (1999); *Meyer v. Grant,* 486 U.S. 414, 421–22, 108 S.Ct. 1886, 100 L.Ed.2d 425 (1988); *Morrill v. Weaver,* 224 F.Supp.2d 882, 897–99 (E.D.Pa.2002).

██ Objector argues that Mr. Himebaugh's employment in Candidate's legislative office and political work invalidate his notarizations because Section 19(e) of the Notary Public Law[3] provides that "[n]o notary public may act as such in any transaction in which he is a party directly or pecuniarily interested." 57 P.S. § 165(e). That contention is without merit. A candidate's notarization of his own nomination petition and a circulator's notarization of his own circulation affidavits violate this prohibition and are invalid. *In re Nomi-*

---

3. Act of August 21, 1953, P.L. 1323, *as amended,* 57 P.S. § 165(e).

*nation Petition of Kersten,* 525 Pa. 65, 67, 575 A.2d 542, 543 (1990); *In re Nominating Petition of Berg,* 973 A.2d 447, 450 (Pa.Cmwlth.2009), *aff'd without op.,* 601 Pa. 85, 971 A.2d 486 (2009); *In re Nomination Petition of Petrone,* 713 A.2d 1175, 1177 (Pa.Cmwlth.1998). Mr. Himebaugh, however, is not the candidate and did not circulate any of the pages that he notarized; indeed, he did not circulate any of the pages of this nomination petition.

█ The mere fact that the notary works for an interested party does *not* make him "directly or pecuniarily interested" in the transaction. 57 P.S. § 165(e)(2) (under the Notary Public Law "none of the following shall constitute a direct or pecuniary interest: ... (2) being an officer, director or employe of a company that is a party to the notarized transaction, unless the director, officer or employe personally benefits from the transaction"); *In re Nomination Petitions of McIntyre,* 778 A.2d 746, 749–50 (Pa.Cmwlth.2001), *aff'd without op.,* 564 Pa. 670, 770 A.2d 326 (2001) (notarizations of nomination petitions by office manager of candidate's law firm were valid because that employment did not constitute a direct or pecuniary interest in the candidacy); *Petrone,* 713 A.2d at 1176 (notarizations of state representative's nomination petitions by members of his district office staff were valid because staffers did not have a direct or pecuniary interest in his candidacy where they were employed by political party, not by state representative). Here, although Mr. Himebaugh works in Candidate's district office as his legislative assistant, the Caucus, not Candidate, is his employer and he is not dependent on Candidate's reelection to the legislature for his continued employment. Mr. Himebaugh therefore had neither a direct nor a pecuniary interest in Candidate's nomination petition and his notarizations of pages of that petition did not violate the Notary Public Law. *Petrone,* 713 A.2d at 1176.

█ Mr. Himebaugh's political work likewise does not invalidate his notarizations. Circulation of pages of a candidate's nomination petition does not constitute a direct interest in the candidacy and does not disqualify a notary from notarizing affidavits of other circulators of the nomination petition. *McIntyre,* 778 A.2d at 749; *Petrone,* 713 A.2d at 1177. *Citizens Committee to Recall Rizzo v. Board of Elections of the City and County of Philadelphia,* 470 Pa. 1, 367 A.2d 232 (1976), relied on by Objector, is completely distinguishable from this case. In *Rizzo,* the notaries held to be directly interested parties were active participants in the petition drive for which they notarized affidavits, and included the petition drive coordinator and salaried employees of the petition drive itself. 470 Pa. at 22–23 & n. 24, 367 A.2d at 242–43 & n. 24. In contrast, Mr. Himebaugh's political work was not for the campaign at issue here. Rather, the only nomination petitions that he circulated were for different political races, Candidate's congressional candidacy and Candidate's brother's legislative candidacy. There is no evidence that Mr. Himebaugh did any work in Candidate's 170th Legislative District nomination petition drive or campaign other than filing two supplemental pages of the nomination petition containing a total of 11 signatures, along with supplemental pages of the congressional nomination petition that he was filing the same day. That limited activity cannot be characterized as significant involvement in the 170th Legislative District campaign.

Moreover, the language of the *Rizzo* opinion on which Objector relies is of questionable precedential value. The ruling on the validity of petition signatures and notarizations in *Rizzo* is a plurality opinion of

only three justices, not joined in by a majority of the Court. The fourth justice who held that the recall was invalid did so only on the ground that the recall provision of the Philadelphia Home Rule Charter violated the Pennsylvania Constitution. 470 Pa. at 31–35, 367 A.2d at 247–49 (O'Brien, J., concurring). *See In re Petition to Recall Reese,* 542 Pa. 114, 120, 665 A.2d 1162, 1165 (Pa.1995) (holding that in *Rizzo* "there was not a majority of the Court voting to decide the case on the narrow legal ground regarding the appropriateness of mandamus or on the narrow factual ground regarding the validity of certain petitions and signatures"). In addition, the *Rizzo* plurality's expansive reading of the Notary Public Law as prohibiting notarization by a notary who has an interest greater than the general public is undermined by a subsequent amendment of the Notary Public Law. In 2002, the General Assembly amended the Notary Public Law to make clear that indirect interest in a transaction, such as the notary's status as an employee of a party, does not disqualify the notary. Act of December 9, 2002, P.L. 1269, No. 151, § 10 (adding subsections (e)(1)-(3) to the prohibition on notarization by "a party directly or pecuniarily interested" to expressly provide that mere status as a shareholder, officer, director or employee of a party to the transaction does not constitute "a direct or pecuniary interest").

■ Because Mr. Himebaugh had no direct or pecuniary interest in Candidate's nomination petition, his notarizations of pages 1–22, 24–34, 37–49, 59, 64–80, 82–84, and 87 of the nomination petition are valid.[4] Candidate's nomination petition therefore has 1,054 valid signatures, far more than the 300 required for him to be placed on the ballot for this office. The Court accordingly dismissed Objector's petition to set aside the nomination petition.

---

4. Indeed, even if Mr. Himebaugh's notarizations were held invalid, Objector would not be entitled to set aside the nomination petition. Where, as here, there is no challenge to the genuineness of the petition signatures or the method by which they were gathered, a notarization, other than by the candidate himself, set aside solely on grounds of the notary's relationship to the campaign, is an amendable defect that the candidate may cure by notarization of amended circulator affidavits by a different, disinterested notary. *Kersten,* 525 Pa. at 67–69, 575 A.2d at 543–45 (candidate

may submit amended affidavits to cure notarization by petition circulator of her own circulator affidavits); *but see Berg,* 973 A.2d at 451–52 (notarization by candidate himself is not an amendable defect). Candidate submitted in evidence amended circulator affidavits (Exhibit R–4), and Objector stipulated at the hearing that these affidavits were sufficient to cure the defect that she asserted if the Court found that Mr. Himebaugh's notarizations were invalid and that the defect was amendable.